**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Nafis STOKES, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 15, 2011.
Filed Dec. 1, 2011.

Teri Himebaugh, Schwenksville and John M. Belli, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, SHOGAN, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

Nafis Stokes appeals from the judgment of sentence of sixteen to thirty-two years incarceration imposed by the trial court after his convictions for conspiracy to commit murder, aggravated assault,[1] conspiracy to commit aggravated assault, recklessly endangering another person ("REAP"), possession of an instrument of crime ("PIC"), possession of a controlled substance (marijuana), and persons not to possess a firearm. After careful review, we affirm.

The pertinent facts are as follows. On January 8, 2007, fourteen-year-old M.L. and his friend were seeking to purchase marijuana. The two boys proceeded down Judson Street in Philadelphia where they encountered a group of males, including Appellant. A member of the group asked M.L. why he was on his block and ordered M.L. to leave. M.L. responded that he could walk wherever he wanted and that the individual did not own the block. After the verbal sparring, M.L. and his friend entered a Chinese restaurant at the end of the street. When M.L. exited, he was shot three times, once in the lower back, left arm, and left groin. Although suffering from three gunshot wounds, M.L. ran four blocks before collapsing in the road. Police transported him immediately to Temple University Hospital where he underwent emergency surgery. As a result of the shooting, doctors removed M.L.'s left kidney.

Philadelphia detectives James Rago and James Waring interviewed M.L. after his release from the hospital. M.L. informed police that the shooter was, "Black, dark skin, tall but a little shorter than the other guy, short hair, he's always on Judson Street. Somebody told me his name is Nafis." N.T., 2/24/10, at 103. In addition, he told the detectives that the shooter was not wearing a mask and that he recognized him from seeing him on Judson Street for approximately one year. After being shown a photograph of Appellant, M.L. confirmed that the photograph was of the individual who shot him.

Police arrested Appellant at his mother's home on Judson Street. At the time of the arrest, Appellant was exiting the front bedroom on the second floor of the house. A search of Appellant's person revealed six packets of marijuana. Additionally, in the bedroom from which Appellant was seen departing, police found a .38 caliber revolver as well as a small amount of marijuana.

---

1. The criminal information references language pertinent to both 18 Pa.C.S. § 2702(a)(1) and (a)(4). The trial court herein did not instruct the jury relative to § 2702(a)(4); hence, Appellant was found guilty of violating § 2702(a)(1). This issue is relevant to one of Appellant's sentencing claims.

The gun recovered by police did not match ballistics for the weapon that wounded M.L. In another bedroom, police located additional marijuana, Appellant's identification card, and drug ·paraphernalia. Thereafter, the Commonwealth charged Appellant with attempted murder, conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, REAP, PIC, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia. These charges stemmed from the shooting incident. The Commonwealth also charged Appellant with possession of marijuana, PIC, and persons not to possess firearms.

M.L. subsequently identified Appellant as his attacker at Appellant's preliminary hearing, stating that he knew Appellant did it and that he had no doubt that Appellant shot him. However, at trial M.L. testified differently, asserting that Appellant did not shoot him and that he never told police that Appellant was the shooter. According to M.L., Appellant was entering a car on the corner of the street when the incident occurred. He also claimed that he told police the same story. As a result of Appellant's inconsistent statements, the Commonwealth introduced Appellant's preliminary hearing testimony as substantive evidence and called the assistant district attorney who presented the Commonwealth's case at Appellant's preliminary hearing. The district attorney testified that M.L. had identified Appellant as his assailant. Similarly, both Detectives Rago and Waring stated that they took a verbatim statement from M.L. identifying Appellant as his attacker.

Prior to the court instructing the jury, Appellant's trial counsel requested a special interrogatory relative to the possession of marijuana charge. Specifically, counsel sought to have the jury specify whether it found Appellant possessed marijuana on his person, in the front bedroom, or the back bedroom. Counsel reasoned that since a handgun was located in the front bedroom, Appellant could be subject to a mandatory sentence. The trial court declined to issue the special interrogatory.

Related to the shooting incident, the jury returned not guilty verdicts on the counts charging attempted murder, PIC, and both firearms violations. Thus, the jury appeared to have concluded that the prosecution failed to prove beyond a reasonable doubt that Appellant was the actual shooter and possessed a gun during the shooting. However, the jury did find Appellant guilty of conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, and REAP. With respect to the drug related charges, the jury found Appellant guilty of possession of a controlled substance and PIC. In a separate proceeding, the trial court adjudicated Appellant guilty of the person not to possess firearms charge.

At sentencing, the Commonwealth invoked 42 Pa.C.S. § 9712, and requested that the court sentence Appellant to a five-year mandatory term based on possession of a firearm during a crime of violence. In addition, the Commonwealth invoked the deadly weapon used enhancement for determining Appellant's sentencing guideline ranges. Appellant argued that because the jury found him not guilty of the firearms charges, as well as PIC, and attempted murder, it had concluded that he was innocent of possessing and using a firearm during the shooting. The Commonwealth countered that the trial judge could determine at sentencing, based on the preponderance of the evidence, whether the mandatory sentence applied. The court agreed with the Commonwealth and held that M.L.'s trial testimony that Appellant did not shoot him or have a gun during the

incident was incredible. Accordingly, the court imposed the mandatory minimum sentence of five years for the aggravated assault charge and applied the deadly weapon used enhancement in ascertaining the guideline ranges for Appellant's additional convictions, except his PIC and person not to possess firearms convictions.[2]

The court also sentenced Appellant to ten to twenty years incarceration for conspiracy to commit murder, and one to two years imprisonment on the persons not to possess firearms count. These sentences were imposed consecutively. In addition, the court sentenced Appellant to concurrent terms of incarceration of one to two years for both REAP, PIC, and thirty days imprisonment for possession of marijuana. Appellant's aggregate sentence was sixteen to thirty-two years imprisonment.

Appellant timely appealed and the trial court directed that counsel file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following a grant of an extension to file the 1925(b) statement, Appellant complied, and the court authored its Pa.R.A.P. 1925(a) opinion. The matter is now ready for our consideration. Appellant raises the following issues.

I. Did the trial court violate Appellant[']s state constitutional and federal 5th and 14th Amendment rights by refusing Appellant's request for a jury interrogatory that separated the drugs that Appellant conceded were found in his possession from those that were found in other parts of the house, specifically the front bedroom. The court erred in failing to sustain Appellant's request for a mistrial?

II. Did the trial court violate Appellant[']s state constitutional and statutory rights and his federal 6th, 8th and 14th Amendment rights and abuse its' [sic] discretion by impermissibly applying firearm evidence under 42 Pa. C.S.A. § 9712 at sentencing when the jury acquitted the Appellant of charges related to possession or use of a firearm?

III. Did the trial court deny Appellant his state constitutional and federal 14th Amendment rights in that there was insufficient evidence to support a finding that Appellant possessed the instrument of crime?

IV. Was the jury's guilty verdict on conspiracy to commit murder of the first degree inconsistent with their verdict acquitting Appellant of first degree murder thereby violating his state and federal constitutional rights?; [sic] Did the Court violate Appellant's constitutional rights by charging the jury on conspiracy to murder in the first degree when there was insufficient evidence of record to support the charge?

V. Was Appellant denied his state constitutional and his federal 14th Amendment rights when

---

**2.** The deadly weapon enhancement is inapplicable for both PIC and persons not to possess firearms. 204 Pa.Code § 303.10(a)(3)(i)(viii). Further, we note that a court cannot impose a deadly weapons used or possessed enhancement for a conviction under 18 Pa.C.S. § 2702(a)(4) since it is an element of the aggravated assault crime. *See* 204 Pa.Code § 303.10(a)(3)(vi). As noted in footnote 1, Appellant was convicted of a different aggravated assault charge.

the prosecution was permitted to elicit impermissible voucher testimony from detectives?

VI. Was Appellant denied his state constitutional and his federal 14th Amendment rights when the prosecution was permitted to elicit impermissible voucher testimony from Detective James Waring related to the approval process for the arrest and search warrants?

VII. Was Appellant denied his state constitutional and federal 6th and 14th Amendment rights when the trial court permitted Detective James Rago to testify to irrelevant hearsay and give his personal opinion that he found it amusing that the person who shot the victim was trying to date the victim's sister?

VIII. Was Appellant denied his state constitutional and his federal 14th Amendment right[s] when the Commonwealth, through witness Assistant District Attorney McGlynn was permitted despite defense counsel's objection, to continue to bolster and highlight specific questions contained in the preliminary hearing transcript after the court had already sustained defense counsel's previous objection?

Appellant's brief at 4–5.

■ Both Appellant's third and fourth issues raise sufficiency challenges. As a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we address those claims first. Appellant contends that there was insufficient evidence to establish his guilt of PIC relative to the firearm located within the bedroom in his residence. Appellant avers that the Commonwealth failed to prove that he in-tended to control the gun located on the top shelf of a closet in the second floor front bedroom. In setting forth his argument, Appellant posits that to sustain his conviction, the prosecution was required to show that he "actually knew of the existence of the weapon." Appellant's brief at 18. Appellant submits that the sole proof that he constructively possessed the gun was based on police witnessing him exiting the room. Since Appellant's fingerprints were not on the gun and no other evidence demonstrated that he knew the gun was in the closet, Appellant maintains that the evidence was too weak and inconclusive to justify his conviction.

Our standard and scope of review for a sufficiency claim is settled.

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley,* 14 A.3d ·887, 889–890 (Pa.Super.2011). Additionally, "in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Coleman,* 19 A.3d 1111, 1117 (Pa.Super.2011).

 To prove PIC, the Commonwealth must demonstrate that the defendant "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907. An instrument of crime is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). It is undisputed that a gun can be an instrument of crime. Therefore, the Commonwealth was required to establish that Appellant constructively possessed the gun and intended to employ it criminally. Appellant does not specifically allege that he did not intend to employ the firearm criminally. Rather, he posits that "in order to prove the intent element necessary to establish *constructive possession,* the Commonwealth must present evidence that establishes beyond a reasonable doubt that the defendant actually knew of the existence of the weapon." Appellant's brief at 18.

We hold that the jury could have reasonably inferred that Appellant constructively possessed the loaded firearm in connection with the illegal drugs located in the home.

Appellant had no license to carry the firearm.[3] Marijuana and a digital scale were located in close proximity to the gun; indeed, they were in the same room. Appellant hastily fled from the room where the gun was found after police knocked and announced their presence three times. Police also recovered six bags of marijuana on Appellant. The marijuana on Appellant's person was packaged identically to that found in a rear bedroom, which was close in proximity to the other bedroom. The fact that no fingerprints were on the firearm was explained by the presence of tape on the gun's handle, another indication that the gun was not intended for lawful purposes. Although Appellant's identification card was not discovered in the same room as the firearm, Appellant had access to that room as he was seen leaving it by the SWAT team that breached the residence. Viewed in a light most favorable to the Commonwealth, this evidence is not so weak and inconclusive that no probability of fact could be drawn from it.

 Appellant's fourth issue is that the jury rendered an inconsistent verdict which deprived him of his constitutional rights, and that there was insufficient evidence to establish his guilt of conspiracy to commit murder. According to Appellant, the jury's verdicts of not guilty on the attempted murder count and guilty for the conspiracy to commit murder charge were inconsistent.[4]

---

3. Although not before the jury, Appellant could not lawfully possess a firearm.

4. The trial court, while instructing generally on accomplice liability, did not specifically instruct the jury that it could find Appellant guilty of attempted murder as an accomplice. However, in charging on conspiracy, the court did state that it could find Appellant guilty of attempted murder as a coconspira-tor. N.T., 2/25/10, at 91–92. Nonetheless, relative to its attempted murder instruction, the court expressly stated, "In order to find the defendant guilty of attempted murder, you must be satisfied that three elements have been proven to you beyond a reasonable doubt. First, that the defendant did a certain act. That act being the shooting." N.T., 2/25/10, at 86–87.

First, inconsistent verdicts are not grounds for relief. *Commonwealth v. Phillips,* 879 A.2d 1260 (Pa.Super.2005). As we outlined in *Commonwealth v. Frisbie,* 889 A.2d 1271, 1273 (Pa.Super.2005):

> "Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." *Commonwealth v. Petteway,* 847 A.2d 713, 718 (Pa.Super.2004) (citations omitted). Rather, "the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." *Commonwealth v. Miller,* 441 Pa.Super. 320, 657 A.2d 946, 948 (1995) (citations omitted). "When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." *Petteway, supra.*

Insofar as Appellant challenges the sufficiency of the evidence for his conspiracy conviction, we have previously set forth our standard of review for such claims and find that the Commonwealth introduced sufficient evidence. To establish conspiracy to commit murder, the Commonwealth must show that the defendant, with the specific intent to kill, agreed with one or more persons to commit murder, or agreed to attempt to commit murder, or solicited someone to commit such crime or agreed to aid in the commission, attempt, or solicitation of such crime, and committed an overt act towards the commission of the murder. *See* 18 Pa.C.S. § 903 (conspiracy); 18 Pa.C.S. § 2502(a) (murder of the first degree).

The evidence demonstrated that M.L. was involved in a verbal altercation with a group of males. Afterward, M.L. walked down the street into a Chinese restaurant. The other men entered a residence before following M.L. to the restaurant. After M.L. exited the restaurant, fifteen gunshots were fired and he was hit multiple times, causing him to lose his left kidney. M.L. initially informed detectives that Appellant was part of the group that followed him and shot him, expressly telling police that Appellant was his assailant. He subsequently testified at a preliminary hearing that Appellant was among the group that attacked him and was the shooter. Although the victim testified at trial that Appellant did not shoot him and was not part of the group that attacked him, the jury was free to disregard all or part of this testimony. This evidence, when viewed in a light most favorable to the Commonwealth, was sufficient to establish that Appellant conspired to commit first-degree murder. Having addressed the merits of Appellant's sufficiency issues, we now analyze his remaining claims.

Appellant's initial contention is that the trial court violated his state constitutional and Fifth and Fourteenth Amendment rights by refusing to submit a special interrogatory relative to whether Appellant possessed marijuana in the front bedroom where police recovered the firearm. Appellant cites *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Commonwealth v. Kearns,* 907 A.2d 649 (Pa.Super.2006), arguing that the fact of possession of a firearm resulted in his sentence being increased. Appellant's issue is wholly without merit. While a firearm mandatory sentence exists for those adjudicated guilty of possession with intent to deliver, *see* 42 Pa.C.S. § 9712.1., no such sentencing mandatory is applica-

ble to those found guilty of simple possession. The court did not impose a firearm mandatory sentence relative to his possession of marijuana conviction nor could it have. Thus, the court did not err in refusing to give the special interrogatory and Appellant's claim fails.

 The second claim Appellant levels on appeal is that the trial court violated his state constitutional and statutory rights and his Sixth, Eighth, and Fourteenth Amendment rights by impermissibly applying firearms evidence under 42 Pa.C.S. § 9712 at sentencing when the jury acquitted him of charges related to possession or use of a firearm.[5] Phrased more simply, Appellant alleges that the trial court erred in utilizing both the firearm mandatory and deadly weapon used sentencing enhancements where the jury concluded that he did not possess a firearm during the shooting incident.

This question presents an issue of import. Specifically, the issue raised is whether a defendant who is adjudicated not guilty of the charges that implicate possession of a firearm may still receive both a mandatory firearm sentence and application of the sentencing guidelines' deadly weapon used enhancements based on a trial court's finding at sentencing that the Commonwealth established by a preponderance of the evidence that the defendant used a firearm.[6]

The applicable mandatory sentence reads in relevant part:

(a) **Mandatory sentence.**—Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

(b) **Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a prepon-

---

5. Appellant has not cited to case law or made any relevant legal argument with respect to his Eighth Amendment or state constitutional cruel and unusual punishment claim; therefore, that aspect of his issue is waived. *Commonwealth v. Hakala*, 900 A.2d 404 (Pa.Super.2006). In addition, Appellant has made no distinction between his state constitutional and federal constitutional rights, citing Pennsylvania cases that rely on federal constitu-

tional analysis. Accordingly, we address Appellant's claims in that light.

6. In *Commonwealth v. Green*, 417 Pa.Super. 119, 611 A.2d 1294 (1992), a similar issue was raised. Therein, the defendant was found guilty of aggravated assault and not guilty of PIC. The court sentenced Appellant under 42 Pa.C.S. § 9712. We did not reach the issue as we awarded a new trial based on prosecutorial misconduct.

derance of the evidence, if this section is applicable.

42 Pa.C.S. § 9712(a)-(b). Additionally, the deadly weapon used enhancement provides,

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.18). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i) Any firearm, (as defined in 42 Pa. C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa.Code § 303.10(2).

 Instantly, the jury concluded that Appellant was not guilty of PIC and two different firearm violations with regard to the shooting of M.L. It also found him not guilty of attempted murder. Hence, it appears that the jury rejected the Commonwealth's position that Appellant possessed a firearm during the shooting. Instead, the jury seems to have determined that Appellant conspired with and apparently was an accomplice to the actual shooter. Of course, pursuant to *Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95 (2007), a conspirator or accomplice cannot lawfully be sentenced under § 9712. The court at sentencing, however, expressly stated that the victim's trial testimony was incredible and that the Commonwealth proved by a preponderance of the evidence that Appellant possessed and used a firearm during the shooting. *See* N.T., 5/17/10, at 6 ("I find that the evidence does show by a preponderance certainly that

the defendant, Mr. Stokes, not only possessed the firearm but was the shooter in this case.").

According to Appellant, since the jury rejected the Commonwealth's theory that Appellant was the shooter, deeming the victim's trial testimony credible, the court could not reach a contrary conclusion. Appellant acknowledges this Court's decisions in *Commonwealth v. Kleinicke*, 895 A.2d 562 (Pa.Super.2006) (*en banc*) and *Commonwealth v. Gutierrez*, 969 A.2d 584 (Pa.Super.2009), but asserts that in those cases, the judges decided the applicability of a mandatory sentence based on questions the jury did not determine. By substituting its own credibility determination in place of the jury, Appellant contends the court committed reversible error. He also submits that the trial court erred in applying the deadly weapon used enhancement to his charges based on its finding, under 42 Pa.C.S. § 9712, that Appellant visibly possessed and utilized a gun during the commission of the conspiracy and aggravated assault.

 Appellant's argument presents separate and distinct but intertwined issues, one involving application of the firearm mandatory sentence pursuant to § 9712 and another regarding the application of the deadly weapon used enhancements. Application of a mandatory sentence, even where the trial court could have issued the same sentence without invocation of that mandatory, has been held to raise a legality of sentencing question. *Commonwealth v. Foster*, 960 A.2d 160 (Pa.Super.2008) *affirmed* by Opinion Announcing Judgment of Court, 17 A.3d 332 (Pa.2011). Hence, the issue cannot be waived. We note, however, that Appellant raised both portions of his issue at sentencing. Appellant's latter interrelated position implicates the discretionary as-

pects of sentencing. *Commonwealth v. Greene*, 702 A.2d 547 (Pa.Super.1997). As this Court stated in *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super.2010),

> there is no absolute right to appeal when challenging the discretionary aspect of a sentence. *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa.Super.2008). Appeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code. *Id.* at 886. A substantial question is raised when the appellant sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. *Id.*

When a challenge to the discretionary aspect of a sentence is raised, an appellant must provide a separate statement specifying where the sentence falls in the sentencing guidelines, what provision of the sentencing code has been violated, what fundamental norm the sentence violates, and the manner in which it violates the norm. Pa.R.A.P. 2119(f).

 Here, Appellant has neglected to include a Pa.R.A.P. 2119(f) statement. Ordinarily, this would result in waiver of this portion of his argument. However, the Commonwealth failed to properly object.[7] Accordingly, we may proceed to address whether Appellant has presented a substantial question. *Commonwealth v. Stewart*, 867 A.2d 589 (Pa.Super.2005);

*Greene, supra* at 551. Pursuant to *Greene*, application of the deadly weapon used enhancement does pose a substantial question. *See also Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super.2008). In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard. *Crump, supra* at 1282. When examining legality of sentence questions, our standard of review is *de novo* and our scope of review plenary. *Gutierrez, supra.*

At the outset, we point out that the Sixth Amendment provides in relevant part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation[.]" U.S. Const. amend. VI. The Supreme Court has held that the Sixth Amendment right to trial is applicable to the states via the due process clause of the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *see also McDonald v. City of Chicago, Ill.*, —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (Thomas, J. concurring) (discussing view that the privileges and immunities clause of the Fourteenth Amendment incorporated the individual rights contained in the first eight amendments against the states).

In the watershed *Apprendi* case, the Supreme Court held that any fact except a

---

7. We are aware that this Court did not permit the Commonwealth to file an untimely brief in this matter, in large part because the Commonwealth was informed on May 17, 2011 that no further extensions to file a brief would be granted and its brief was due on July 11, 2011. Despite this fact, the Commonwealth neglected to file a brief on July 11, 2011, instead requesting permission for an addition-

al extension. That extension was denied. The Commonwealth then waited until September 1, 2011 to request an additional extension. We denied that request in light of our prior orders. The Commonwealth, nonetheless, submitted an untimely letter brief. We do not consider that brief on appeal. *See Commonwealth v. Beasley*, 559 Pa. 604, 741 A.2d 1258, 1261 n. 8 (1999).

prior conviction that increases the range of punishment beyond the statutory maximum penalty for that crime must be charged in an indictment, submitted to the jury, and proven beyond a reasonable doubt. The Court further defined the term statutory maximum in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). According to the *Blakely* Court, the statutory maximum is the maximum sentence a court can impose based solely on the facts reflected by the jury verdict or admitted by the defendant during his guilty plea. In reaching this conclusion, the Supreme Court considered unconstitutional a mandatory sentencing guideline structure that permitted the trial judge to increase the defendant's sentence for kidnapping three times more than the mandatory standard range sentence, but below the ten-year maximum, based on a finding that the defendant acted with deliberate cruelty.

Following *Blakely,* the Supreme Court, in a highly fractured decision, ruled that the federal sentencing guidelines could not withstand constitutional scrutiny where the defendant's then-mandatory federal guideline range was elevated by a fact not proven beyond a reasonable doubt. *U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the jury's verdict yielded a federal guideline range of 210 to 262 months incarceration. The judge made a factual finding at sentencing that increased the guideline ranges. Applying *Apprendi* and *Blakely,* the court held that the defendant's Sixth Amendment right to trial was violated. The Court then issued a separate and equally divided remedial decision which declared that the federal guidelines would be advisory, thereby removing the Sixth Amendment implications. Thereafter, in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), the Supreme Court ruled that a California trial court's aggravation of a sentence based on a preponderance of the evidence standard violated *Apprendi.* The defendant in *Cunningham* was convicted of continuous sexual abuse of a child under age fourteen. At the time, California law provided that a defendant could be sentenced within one of three sentencing tiers: six, twelve, or sixteen years imprisonment. California law mandated that the defendant be sentenced to twelve years incarceration unless the court found aggravating factors. The sentencing court so found, and the defendant was sentenced to sixteen years imprisonment.

Appellant does not assert that 42 Pa. C.S. § 9712 facially violates the *Apprendi* line of decisions. Indeed, the *Apprendi* Court, in determining that any fact except a prior conviction that increases the statutory maximum sentence a defendant can receive must be proven beyond a reasonable doubt, expressly distinguished *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which upheld the statute at issue herein against a due process and Sixth Amendment jury trial challenge. *See Apprendi, supra* at 487 n. 13, 120 S.Ct. 2348; *Commonwealth v. Mitchell,* 883 A.2d 1096 (Pa.Super.2005) (discussing *Apprendi, Blakely,* and the binding nature of *McMillan* and upholding the constitutionality of 42 Pa.C.S. § 9712); *Kleinicke, supra; Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality decision affirming viability of *McMillan* ).

In *McMillan,* the Supreme Court held that § 9712 did not offend due process or the Sixth Amendment right to a jury trial. Therein, the defendant argued that visible possession of a firearm was an element of the crimes the jury had convicted him of committing. The High Court dismissed that position, holding that the Pennsylvania legislature elected to make visible pos-

session of a firearm a sentencing factor. The Court, however, recognized that a state cannot relieve defendants of the presumption of innocence or prosecutors from the burden of proving guilt. Nor is a state legislature allowed to give unlimited authority to judges in imposing an enhanced punishment. In upholding the constitutionality of § 9712, the *McMillan* Court opined that the statute did not increase the statutory maximum, create a separate crime, or apply until the defendant was convicted of a certain crime.

Since Appellant could have received a five-to-ten-year sentence for his aggravated assault conviction without a determination that he possessed a firearm, *Apprendi*, *Blakely*, *Booker*, and *Cunningham* do not render the statute facially unconstitutional. *See also Kleinicke, supra.*[8] Appellant, however, sets forth an as-applied attack to the statute. Simply put, because the jury found him not guilty of possessing or using a firearm during the aggravated assault, he reasons that the trial court cannot constitutionally impose the mandatory sentence based on its own differing credibility determination.

In *Gutierrez, supra,* this Court addressed a similar yet distinct issue. Therein, the defendant was found guilty of constructively possessing a shotgun. Additionally, the defendant was convicted of possession with intent to deliver ("PWID"). As a result, the Commonwealth sought imposition of 42 Pa.C.S. § 9712.1.[9] The sentencing court declined to impose that mandatory sentence because the jury determined that the defendant did not personally possess the drugs within close proximity to his possession of the firearm.

In remanding for resentencing, the *Gutierrez* Court opined, "a jury's verdict does not bind the sentencing court in its application of a mandatory minimum sentencing provision as long as the minimum does not exceed the statutory maximum for the crime in question." *Gutierrez, supra* at 592. Yet *Gutierrez* did not involve a situation where the jury expressly rejected in its verdict that the defendant possessed or utilized a weapon. Rather, the jury adjudicated the defendant guilty of possession of a firearm and PWID. Moreover, the question at sentencing was not whether the defendant possessed the weapon, which the jury concluded he did, but whether the firearm was in close proximity to the drugs, a factor that was not part of a charged crime. Finally, contrary to § 9712, the mandatory minimum under

---

**8.** Our decision today necessarily rests on the foundation of *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and its continued viability. Were a majority of the Supreme Court to adopt Justice Thomas's position espoused in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and again in *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), that any fact that becomes the basis for imposing or increasing a defendant's sentence, even if it does not increase the maximum sentence, must be proven beyond a reasonable doubt, then § 9712 would no longer be constitutional.

**9.** § 9712.1. Sentences for certain drug offenses committed with firearms

**(a) Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), [FN1] known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

42 Pa.C.S. § 9712.1.

§ 9712.1 is applicable to accomplices. Hence, this Court was not faced with whether a sentencing court could reject a unanimous jury verdict, *i.e.*, that Appellant himself did not use a firearm, in reaching its own findings relative to applying § 9712.

The plain language of 42 Pa.C.S. § 9712 allows the sentencing court to determine by a preponderance of the evidence if a defendant visibly possessed or used a firearm during the commission of statutorily-defined crimes of violence. In reaching its decision, the court must consider the evidence at trial and any additional evidence presented by the Commonwealth. *See* 42 Pa.C.S. § 9712(b) ("The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable."); *Commonwealth v. Fitzhugh,* 360 Pa.Super. 217, 520 A.2d 424 (1987). The sentencing court rejected the jury's findings when it reasoned that Appellant was the shooter.

Ordinarily, a jury's credibility determination is virtually unassailable. This case, however, presents the situation where the court is determining what has been labeled by our legislature as a sentencing factor. Since that sentencing factor does not increase Appellant's statutory maximum sentence, it is the sentencing court's duty to ascertain whether the factor was present. Sentencing factors like the one at issue do not need to be proven beyond a reasonable doubt, nor even included in a criminal information or indictment. Furthermore, the Supreme Court has stated that the Sixth Amendment does not "automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Rita v. United States,* 551 U.S.

338, 352, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Yet, in the case *sub judice,* the jury did determine the factual matter that the court considered at sentencing and decided those facts in a manner inconsistent with the sentencing court.

We find *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), instructive and hold that a sentencing court may reject a jury's acquittal in determining whether a defendant possessed or used a firearm under 42 Pa.C.S. § 9712. The *Watts* Court considered whether a sentencing court, in applying the federal sentencing guidelines, could consider conduct of the defendant for which the defendant was acquitted. In *Watts,* police located cocaine, two firearms, and ammunition in the defendant's home. The jury convicted Watts of possession of cocaine with intent to distribute but acquitted him of using a firearm during the commission of the drug offense. The sentencing court, nevertheless, concluded by a preponderance of the evidence that Appellant possessed the two guns in relation to the drug charge. The Ninth Circuit Court of Appeals vacated the defendant's sentence, holding that the sentencing court violated the double jeopardy clause and could not consider facts rejected by the jury. The Supreme Court reversed. The Court opined that the Ninth Circuit did not "appreciate the significance of the different standards of proof that govern at trial and sentencing," and reasoned that an acquittal "does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *Id.* at 155, 117 S.Ct. 633.

For purposes of determining the firearm mandatory sentence here, the sentencing court is not bound, although it must consider, the jury's acquittal regarding Appellant's actual possession of the firearm. *See Commonwealth v. Tisdale,*

233 Pa.Super. 77, 334 A.2d 722 (1975) (*en banc*). Although Appellant is innocent in the eyes of the law of the firearm charges pertinent to the shooting, he is guilty of aggravated assault, and the court may determine based on a lesser standard of proof whether a gun was used in the commission of that crime. *See McMillan, supra; Kleinicke, supra.* As the sentencing factor does not increase Appellant's maximum sentence, it does not under prevailing precedent infringe either his due process rights or his right to a jury trial. *See Apprendi, Blakely, Booker, Cunningham; see also Commonwealth v. Nguyen,* 834 A.2d 1205 (Pa.Super.2003).

For similar reasons, Appellant's claim that consideration of acquitted conduct in regards to the application of the deadly weapon used enhancement based on the trial court's § 9712 finding also fails. While the sentencing guidelines do not expressly state that the court must determine by a preponderance of the evidence the use of the firearm, it is evident that the court in its application of § 9712 utilized that standard. We note that in *United States v. Grier,* 475 F.3d 556 (3d Cir.2007) (*en banc*), the Third Circuit Court of Appeals addressed the constitutionality of the preponderance standard relative to the federal sentencing guidelines.[10] While we are not bound by such precedent, the differing views espoused in *Grier* offer guidance.

The district court in sentencing the defendant determined by a preponderance of the evidence that the defendant committed the crime of aggravated assault under Pennsylvania law, although he was not charged or convicted of that crime. Accordingly, it considered an increased guideline sentence for his federal plea to possession of a firearm by a convicted felon. The *Grier* Court opined that the Supreme Court had not had an opportunity to "address the applicability of the right to proof beyond a reasonable doubt in an advisory Guidelines system." *Id.* at 565. Analyzing *Apprendi* and its progeny, the majority held that due process was not violated by the preponderance of the evidence standard. The majority reasoned that judicial fact-finding does not offend either the Sixth or Fifth Amendment where the facts do not increase the sentence imposed beyond that which could have been imposed based solely on the jury's verdict. It further remarked that an advisory guideline system removes Sixth Amendment problems because the judge has discretion to sentence either within the guidelines or outside the guidelines so long as the sentence does not exceed the statutory maximum. Accordingly, the majority found "in light of the holding of *Booker* and the reasoning of *Apprendi,* that the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime." *Grier, supra* at 565.

The concurring decision by Judge Ambro in *Grier* also offers a persuasive analysis of why Appellant's issue in the instant case cannot succeed on due process grounds. Although Judge Ambro, like Justice Thomas, was of the belief that all facts that increase a defendant's sentence

---

**10.** The constitutional issue therein revolved around the Fifth Amendment due process clause and not the Sixth Amendment right to jury trial. Nevertheless, we are mindful that the Sixth Amendment jury right is applicable to the states via the Fourteenth Amendment's due process clause, thereby commingling a due process and jury trial right analysis. Equally important, the Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), disposed of the defendant's Sixth Amendment claim by referencing its due process analysis.

must be proven beyond a reasonable doubt, *see Grier, supra* at 574 n. 15 & 586, he reasoned that *McMillan* and *Watts* compelled a finding that a judge could impose an increased guideline range sentence based on a preponderance of the evidence standard, even where the fact was not proven beyond a reasonable doubt.

Judge Ambro found the majority's reliance on *Apprendi* and *Booker* overly broad and misplaced since those decisions involved the Sixth Amendment, and did not fully discuss the Fifth Amendment due process clause.[11] Since the precise issue was not raised, Judge Ambro was unwilling to discuss whether consideration of an acquittal violated the Sixth Amendment right to a jury trial, *id.* at 586 n. 34, but recognized that the Sixth Amendment does not require guideline facts to be proven to a jury. Instead, Judge Ambro relied

heavily on the decisions of *McMillan* and *Watts*.

Noting that *McMillan* upheld the identical statute at issue herein, he reasoned that *McMillan* sets forth the appropriate burden of proof for sentencing factors under the Fifth Amendment's due process clause. The *McMillan* Court specifically upheld the preponderance standard utilized by § 9712. Continuing, Judge Ambro cited to *Watts, supra,* for the proposition that an acquittal does not prevent a sentencing judge from "considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Grier, supra* at 585 (Ambro, J. concurring).[12] Even the dissenting judges in *Grier* acknowledged *Watts,* but distinguished it on the basis that whether a defendant possessed a firearm was "rooted in the Court's traditional understanding of the

---

**11.** *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), did not merely address the Sixth Amendment, as the decision was an appeal from a state supreme court decision. Thus, the Sixth Amendment was applied in that case based on the due process clause of the Fourteenth Amendment.

**12.** We are cognizant that *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) has been called into question and criticized by several lower federal courts in the wake of *U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See e.g. United States v. Ibanga,* 454 F.Supp.2d 532 (E.D. Virginia 2006), *reversed,* 271 Fed. Appx. 298 (4th Cir.2008); *United States v. Kandirakis,* 441 F.Supp.2d 282 (D.Mass. 2006); *United States v. Coleman,* 370 F.Supp.2d 661 (S.D.Ohio 2005); *United States v. Pimental,* 367 F.Supp.2d 143 (D.Mass. 2005); *United States v. Gray,* 362 F.Supp.2d 714 (S.D.W.Va.2005); *United States v. Huerta–Rodriguez,* 355 F.Supp.2d 1019 (D.Neb. 2005); *but see United States v. Vigil,* 476 F.Supp.2d 1231 (D.N.M.2007); *United States v. Edwards,* 427 F.Supp.2d 17 (D.D.C.2006). Indeed, Judge Ambro questioned whether *Watts* applied in the Sixth Amendment context. *United States v. Grier,* 475 F.3d 556, at 586 n. 43 (3d Cir.2007). Nevertheless, many

of those lower federal court decisions have been criticized or reversed. More importantly, *Watts* has not been overturned and has been continuously applied by the federal circuit courts. *See United States v. Waltower,* 643 F.3d 572, 574–579 (7th Cir.2011); *United States v. White,* 551 F.3d 381 (6th Cir.2008) (*en banc* ); *United States v. Brika,* 487 F.3d 450 (6th Cir.2007); *United States v. Mercado,* 474 F.3d 654 (9th Cir.2007); *United States v. Faust,* 456 F.3d 1342, 1347–1348 (11th Cir. 2006); *United States v. Dorcely,* 454 F.3d 366, 372 (D.C.Cir.2006); *United States v. High Elk,* 442 F.3d 622, 626 (8th Cir.2006); *United States v. Vaughn,* 430 F.3d 518, 526 (2d Cir. 2005); *United States v. Price,* 418 F.3d 771, 787–788 (7th Cir.2005); *United States v. Magallanez,* 408 F.3d 672, 684–685 (10th Cir. 2005); *United States v. Duncan,* 400 F.3d 1297, 1303–1304 (11th Cir.2005). Moreover, *Watts* can be reconciled with *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Booker* where the facts determined by the court do not increase the defendant's sentence beyond the statutory maximum as defined in *Blakely.*

kind of facts judges consider in crafting an appropriate sentence." *Grier, supra* at 615. (McKee, J. dissenting).

Nonetheless, we are aware of the criticisms leveled at considering acquitted conduct in fashioning a sentence based on the preponderance of the evidence standard. Certainly, at first blush it appears inequitable to sentence a defendant more harshly based on facts that a jury has determined were not proven beyond a reasonable doubt. Indeed, one federal judge has labeled it Kafka-esque in one breath and invoked Charles Dickens' character Mr. Bumble's famous quote, "If the law supposes that, ... the law is an ass—an idiot." *See United States v. Ibanga,* 454 F.Supp.2d 532, 536 & 543 (E.D.Va.2006), *reversed,* 271 Fed.Appx. 298 (4th Cir.2008). Another jurist, in a pre-*Watts* decision, opined that considering acquitted conduct in sentencing was befitting of the Queen of Hearts from Alice in Wonderland. *United States v. Frias,* 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J. concurring). Moreover, it is not entirely misguided to believe that "when a court considers acquitted conduct it is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved." *United States v. Pimental,* 367 F.Supp.2d 143, 152 (D.Mass.2005).

While the criticisms of allowing acquitted conduct to be considered at sentencing are not unfounded, they consistently miss the critical point for both Sixth Amendment and due process claims. That is, at the time of a trial or guilty plea, what expectations for sentencing does the defendant have? Instantly, Appellant was aware of the possible sentencing ramifications if found guilty. It is difficult to comprehend how it would be unfair to sentence Appellant to a term of incarceration that was not only lawful without any consideration as to whether he used a firearm, but was certainly contemplated by Appellant before he proceeded to trial. This tenet is what underlies the Supreme Court's decisions in *Apprendi, Blakely, Booker,* and *Cunningham.* Appellant is not being punished more harshly for a crime he did not commit; he is being punished within a range of sentences already provided for by law based on facts determined by the jury.

As we have previously noted, the Sixth Amendment right to a jury trial is not violated when the sentence imposed could have been levied solely on the basis of the jury verdict. *See Blakely, supra.* In this case, Appellant's aggravated assault conviction carried with it a guideline standard range sentence of forty-eight to sixty-six months incarceration, based on Appellant's prior record score of two. Sixty-six months is also the bottom range of the deadly weapon used enhancement, which is sixty-six to eighty-four months. Appellant's sentence of five to ten years imprisonment actually fell below the deadly weapon used enhancement for aggravated assault, was within the guidelines standard range, and certainly was within the statutory maximum of ten to twenty years incarceration. Indeed, Appellant's minimum sentence was not necessarily increased by the imposition of the mandatory, as part of the standard guideline range exceeded the mandatory.

With respect to Appellant's conspiracy to commit murder conviction, the standard range sentence was ninety-six months to the statutory limit, whereas the deadly weapon used enhancement increased the bottom range sentence to one hundred and fourteen months imprisonment. Since Appellant's standard range sentence without any finding that he possessed a gun could have been the statutory limit, his sentence for conspiracy to commit murder was one that the court could have imposed solely

based on the facts reflected by the jury's verdict. Phrased another way, Appellant's sentence for conspiracy did not actually require additional fact-finding to result in that sentence.

Appellant's REAP conviction is a somewhat closer issue. Appellant's standard range sentence was restorative sanctions, *i.e.,* probation, to nine months imprisonment and could be aggravated to a twelve-month term. The applicable deadly weapon used enhancement altered the range to six months to fifteen months incarceration. Therefore, Appellant's one-to-two year sentence would have been an aggravated range sentence under the normal sentencing guideline paradigm. However, it did not increase the statutory maximum that Appellant could have received, five years. Thus, Appellant's REAP sentence of one to two years could have been imposed without a finding that he possessed a firearm.

 Lastly, despite the severely splintered decision by the Supreme Court in *Booker,* the Court unanimously agreed that an advisory guideline system does not impinge the Sixth Amendment right to trial by jury. While this Commonwealth's sentencing guidelines must be considered by the sentencing court, those guidelines are advisory. *See Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957 (2007). In sum, since the sentencing court's findings did not mandate an increase in his sentences beyond that which the court could have handed down solely based on the jury verdict, neither Appellant's due process or jury trial rights were violated by imposition of § 9712 or utilization of the

deadly weapon used enhancement based on the trial courts finding under a preponderance of the evidence standard that Appellant possessed a firearm.[13]

 In Appellant's fifth claim, he submits that the court denied his state and federal constitutional rights by permitting the prosecution to elicit impermissible voucher testimony from Detective James Waring related to the submission of an affidavit of probable cause. Similarly, in his sixth issue on appeal, Appellant maintains that his state and federal constitutional rights were infringed when the prosecution brought forth impermissible voucher testimony from Detective Waring when he testified that he turned over his criminal complaint for prosecutorial approval before filing the complaint. We address these issues together.

Appellant argues broadly that "[i]t is constitutionally impermissible for a Commonwealth witness to be permitted to bolster and/or vouch for the credibility of evidence." Appellant's brief at 21. In setting forth his position, Appellant maintains that the Commonwealth improperly questioned Detective Waring whether he would risk his career to obtain an arrest warrant grounded on fabricated or unreliable evidence. According to Appellant, this violates our Supreme Court's decision in *Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147 (1990), *Commonwealth v. Tann,* 500 Pa. 593, 459 A.2d 322 (1983), *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504 (2002), and this Court's holdings in *Commonwealth v. Hartey,* 424 Pa.Super. 29, 621 A.2d 1023 (1993) and *Com-*

---

**13.** We note that our decision is in accord with more recent state court decisions. *See People v. Towne,* 44 Cal.4th 63, 78 Cal.Rptr.3d 530, 186 P.3d 10 (2008); *People v. Pagan,* 165 P.3d 724 (Colo.App.2006); *State v. Clark,* 197 S.W.3d 598 (Mo.2006); *but see State v. Cote,* 129 N.H. 358, 530 A.2d 775, 783–785 (1987); *State v. Marley,* 321 N.C. 415, 364 S.E.2d 133, 138–139 (1988); *Bishop v. State,* 268 Ga. 286, 486 S.E.2d 887, 897 (1997); *see also People v. Rose,* 485 Mich. 1027, 776 N.W.2d 888 (2010) (Kelly, C.J. dissenting).

*monwealth v. Reed,* 300 Pa.Super. 224, 446 A.2d 311 (1982).

In addition, Appellant submits that Detective Waring impermissibly testified about the arrest warrant approval process, stating that he provided the affidavit of probable cause to the district attorney to ensure that the charges were correct. Relying on the aforementioned cases, Appellant contends that the testimony misled the jury into believing that the evidence in support of the warrant was credible evidence of guilt. Further, Appellant posits that Detective Waring's testimony contradicted the jury instruction that informs the jury that evidence of an arrest is not evidence of guilt.

We find the cases relied upon by Appellant readily distinguishable. In *Bricker, supra,* the Commonwealth introduced into evidence signed plea agreements of two witnesses, one of whom was a co-conspirator, that were approved by the local district attorney's office, the Commonwealth's attorney general, and the United States Attorney for the Western District of Pennsylvania. The court then allowed those documents to be sent out with the jury during deliberations. The agreements themselves stated that the witnesses agreed to provide complete and truthful information.

The majority reasoned that the introduction of the plea agreements without proper redaction permitted the jury to reasonably infer that the defendant had the same opportunity as the witnesses to cooperate with authorities but remained silent. *Id.* at 155. These facts bear no similarity to the present case. Similarly, *Tann, supra,* offers no support to Appellant's position. *Tann* involved the admission of plea agreements of two witnesses who received leniency in exchange for testimony against the defendant. The witnesses' attorneys were permitted to testify under oath that

their clients agreed to tell the truth and waive their Fifth Amendment right to remain silent. The *Tann* Court opined:

> This tactic has the effect of emphasizing to the jury that the defendant, who is associated with the witness, has the same opportunity to waive his constitutional rights and tell the truth. The defendant is unduly prejudiced by this blantant[sic] invitation for the jury to draw an inference from the fact that the witness is foregoing his constitutional right against self-incrimination. This tends to spotlight the accused if he fails to do the same thing and clearly invites an improper prejudicial inference from the jury.

*Tann, supra* at 328.

More recently in *Miller, supra,* our Supreme Court rejected a claim that the prosecution engaged in impermissible bolstering by questioning a defendant about whether his plea agreement called for him to testify truthfully. The *Miller* Court held, "It is well settled that as long as a prosecutor does not assert his personal opinions, he or she may, within reasonable limits, comment on the credibility of a Commonwealth witness. This is especially true when the credibility of the witness has been previously attacked by the defense. The prosecutor in the present case did not assert his personal opinions." *Id.* at 516 (internal citations and quotation omitted).

*Hartey, supra,* and *Reed, supra,* also firmly demonstrate that Appellant's claim is without merit. In *Hartey,* the Commonwealth called an assistant district attorney to the stand to explain a plea agreement with a witness. The district attorney testified to additional terms of a plea agreement that were not mentioned by the witness. Those terms were more favorable to the witness then he himself had relayed. Relying on *Reed,* the *Hartey* Court stated,

"improper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: '(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses testimony.'" *Hartey, supra* at 1026 (quoting *Reed, supra* at 314).

■ Detective Waring's testimony that he would not submit a false affidavit of probable cause does not impermissibly bolster the evidence mentioned in the affidavit. Nor did his testimony that the criminal charges were approved by the district attorney's office result in impermissible bolstering. The prosecutor did not provide his own personal assurances that the witness was being truthful, nor did the Commonwealth indicate that evidence not before the jury supported the officer's testimony. A witness's own personal assurance that he would not lie or use unreliable evidence is not impermissible bolstering, as the jury must nevertheless decide if the witness himself is being truthful. Here the jury was still required to determine the truthfulness of Detective Waring's testimony and whether the evidence admitted at trial was reliable. This is the ordinary function of the jury. The detective's testimony did not evade the jury's credibility determining function and Appellant's claim is without merit.

■ Appellant's seventh challenge is to the trial court's admission of allegedly irrelevant hearsay testimony by Detective Rago. Specifically, Appellant contends that the court erred in allowing Detective Rago to state that he found it amusing that the person who allegedly shot the victim was attempting to date the victim's sister. Detective Rago initially stated that M.L. called another person to learn Appellant's name. The detective then stated,

it was kind of amusing. The person-whoever it was that he's speaking to, he says what's the name of that boy on the street, and he tells him the street, you know, the one that's always trying to mess with my sister. He was trying to date his sister. So it's kind of amusing-I'm sorry. It might be sick or twisted. It's kind of amusing to me that the person who actually shot him had been trying to....

N.T., 2/24/10, at 108. Counsel objected on the basis that it was the detective's opinion and the court overruled the objection. Although Appellant now also argues that the evidence was irrelevant and hearsay, he did not specify these objections at trial. Thus, these aspects of Appellant's positions are waived. Pa.R.A.P. 302(a). Nevertheless, Appellant does argue that the officer's personal opinion was inadmissible. Appellant asserts that the detective's testimony improperly intruded on the jury's credibility determining function and mocked Appellant. *See* Appellant's brief at 26–27.

■ Our standard and scope of review for evaluating the admission of evidence is settled.

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

Where the evidentiary question involves a discretionary ruling, our scope of review is plenary.

*Commonwealth v. Mollett,* 5 A.3d 291, 304 (Pa.Super.2010) (internal citations omitted). We find that the jury's credibility-determining function was not invaded.

The prosecutor did not personally assure the jury of the witness's credibility nor did another witness testify as to the credibility of the officer. Appellant offers no support for how the statement made Appellant appear less credible, especially where Appellant's credibility was not an issue since he did not testify.

■■■■■ The last claim leveled by Appellant is that the trial court erred in permitting the assistant district attorney who prosecuted the preliminary hearing herein to highlight specific questions during the preliminary hearing over defense counsel's sustained objection. Appellant contends that the prosecution exceeded its offer of proof and questioned the assistant district attorney beyond the scope of the trial court's ruling. In doing so, Appellant asserts that the prosecution improperly bolstered the victim's credibility from the preliminary hearing. Again, Appellant's position misses its target. We set forth the pertinent exchanges.

> Prosecutor: Was there any hesitation by [M.L.] that this person [Appellant] was not involved or was involved so to speak?
>
> Witness: No.
>
> Prosecutor: Next question, by the judge, "No doubt at all?" Answer: By [M.L.], "I know he's involved. I know he did it." Did [M.L.] tell the judge that?
>
> Witness: He did and the judge said fine.
>
> Prosecutor: Was there any hesitation by [M.L.] in telling the judge that?

N.T., 2/24/10, at 85.

Trial counsel objected at this point and was overruled. The prosecutor continued before the court interrupted and a sidebar followed. Trial counsel objected to the manner in which the prosecutor was questioning the witness, stating that the questions were leading and were not being done to admit M.L.'s prior testimony as substantive evidence. The court cautioned the prosecutor against bolstering, sustained the previous objection, but stated that the prosecution could question the witness about whether the victim hesitated in answering the questions. *Id.* at 88–89. After this exchange, the witness was asked whether the victim hesitated in answering the questions at the preliminary hearing and what his demeanor was like when providing those answers. Trial counsel did not object to this line of questioning. Therefore, Appellant's contention on appeal is waived. Furthermore, the witness did not personally assure the jury that the victim testified truthfully at the preliminary hearing nor did he comment on the credibility of the victim. Rather, the witness stated that the victim had not hesitated in identifying Appellant at the preliminary hearing and was not hostile or "warm and fuzzy." *Id.* at 93. Such testimony is permissible.

For all of the foregoing reasons, we affirm.

Judgment of sentence affirmed.