J-S43006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES BROWN, | |
| Appellant | No. 3529 EDA 2013 |

Appeal from the Judgment of Sentence of October 24, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001988-2012

BEFORE:  GANTMAN, P.J., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 19, 2015**

Appellant, James Brown, appeals from the judgment of sentence entered on October 24, 2013, as made final by the denial of Appellant's post-sentence motion on November 12, 2013.  We affirm.

The trial court ably and thoroughly summarized the factual and procedural posture of this case.  As the trial court explained:

> On June 3, 2011, police arrested and charged Appellant with possession of a controlled substance with intent to deliver [("PWID")], conspiracy to commit PWID, possession of an instrument of crime [("PIC")],[1] and other related charges. On June 25, 2013, Appellant proceeded to a jury trial on the charges of PWID, conspiracy to commit PWID, and PIC.
>
> . . .

---

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903(c), and 18 Pa.C.S.A. § 907(a), respectively.

[During Appellant's trial], Police Officer Gary Francis testified that[,] on May 24, 2011, in the late afternoon, he [and] his partner[,] Police Officer Bradford Mitchell[, were] conducting surveillance on the 5500 block of Crowson Street[, in Philadelphia]. Officer Francis testified that he was at that area with his partner based on information from a confidential informant [("CI"),] regarding alleged narcotics sales on the 5500 block of Crowson Street. . . .

Officer Francis testified that they first drove by the area that day looking specifically for the addresses of 5542 and 5534 Crowson Street, and when they did, they saw [Appellant] and another male[, named] Darnell Cooper[,] standing on the front porch [of] 5542 Crowson Street. The officers met the CI and gave him/her pre-recorded buy money and directed the CI to the location of 5542 Crowson Street. Officer Francis testified that he observed the CI approach [Appellant] and Mr. Cooper [and begin] a conversation with the two men. The officer testified that[,] after [] the brief conversation, Appellant left 5542 Crowson Street and walked down [the street] to [] go inside [of] 5534 Crowson Street. Then Appellant came back to 5542 Crowson and approached the CI. The CI handed [Appellant] the pre-recorded buy money in exchange for small objects which [Appellant gave] him. The CI left the area and met with Officer Mitchell and gave the officer three vials containing [] crack cocaine and one packet of [] crack cocaine which was placed on [a] property receipt.

. . . Officer Francis testified [that, on the next day, he and Officer Mitchell] went back to the same area at around the same time, to continue [their] investigation of [Appellant]. Officer Francis testified that . . . they again saw [Appellant] and Mr. Cooper standing on the front porch of 5542 Crowson Street. They then went and met with the same CI and performed the same procedure as the day before, where the CI was given pre-recorded buy money and directed to the same area. Officer Francis testified that he observed the CI again approach [Appellant] and[,] after a brief conversation, Appellant left 5542 Crowson Street, walked down to and went inside 5534 Crowson Street[, and came] back to 5542 Crowson[, where Appellant] accept[ed] the pre-recorded buy money from the CI in exchange for

small objects[,] which Appellant [gave] to the CI. The CI then left and met again with Officer Mitchell, this time giving him two clear packets of [] crack cocaine, which again was place[d] on [a] property receipt.

On May 31, 2011, Officer Francis testified[,] he and Officer Mitchell went back to that same location around the same time and again observed Appellant and Mr. Cooper standing on the front porch of 5542 Crowson Street. Officer Francis testified that they set up surveillance and observed two different females approach [Appellant] at two different times and engage in the same type of activity that the officers had witnessed the CI had with Appellant on the two other days. Officer Francis also testified that he contacted a uniformed police officer to stop and [ask Appellant] and Mr. Cooper for identification. [Appellant] was not arrested at that time as the officers were trying to further their investigation and to see whether there were any other locations involved besides 5542 and 5534 Crowson Street. . . . [Officer Francis also testified that, following the interaction between the uniformed police officer and Appellant and Mr. Cooper, Appellant and Mr. Cooper retreated inside of 5542 Crowson Street. N.T. Trial, 6/26/13, at 86-90 and 107.]

On June 2, 2011, Officer Mitchell went back to the same area himself with the same CI and performed the same procedure as the [prior two buys], where the CI was given pre-recorded buy money and directed to [5542 Crowson Street]. Officer Mitchell testified that both Appellant and Mr. Cooper were again in front of 5542 Crowson Street and this time Mr. Cooper approached the CI and after a short conversation with the CI, Mr. Cooper went and entered [] 5534 Crowson Street. After about a minute, Mr. Cooper exited 5534 Crowson Street[,] went back to the CI[,] and handed [the CI] something in exchange for the pre-recorded buy money. The CI [] left the area and Officer Mitchell [started to follow the CI]. . . . Mr. Cooper [then] went back [and walked inside of] 5542 Crowson Street. Officer Mitchell [] met with the CI[,] who turned over to him two clear packets [] containing [] crack cocaine.

Based on this information[,] the officers obtained a search and seizure warrant for 5542 and 5534 Crowson Street. On

June 3, 2011, the officers went back to the location with the search and seizure warrant. Officer Mitchell testified that they first executed the search warrant on the property of 5542 Crowson Street. ["Darnell Cooper" was identified as the resident of 5542 Crowson Street. N.T. Trial, 6/26/13, at 126-127 and 167.] . . .

After being let in by Mr. Cooper's mother, Officer Mitchell testified that he confiscated a .38 revolver loaded with five live rounds of ammunition from the dining room area on top of a [china] cabinet. Also confiscated from that same [china] cabinet[] was a clear plastic bag with 26 purple packets each containing . . . crack cocaine, other unused purple packets, as well as a scale. Officer Mitchell testified that based on his years of experience [the paraphernalia] recovered [was] used specifically for packaging and weighing narcotics. . . .

All the items recovered were placed on [a] property receipt. Officer Mitchell then testified that they [] executed the search warrant on 5534 Crowson Street. The officers had to make a forced entry because no one answered the door. There was nothing recovered from that location as it was empty other than some work tools, as it looked like the house was being renovated. [Appellant and] Mr. Cooper were placed under arrest outside of 5542 Crowson Street.

[During trial, the parties stipulated that all of the alleged crack cocaine that was either purchased by the CI or found at 5542 Crowson Street tested positive for cocaine. N.T. Trial, 6/26/13, at 155-157.]

. . .

On June 27, 2013, the jury found Appellant guilty of PWID, conspiracy to commit PWID, and PIC. On October 24, 2013, [the trial court] sentenced Appellant [to serve an aggregate term of three-and-a-half to nine years in prison for his convictions].

Trial Court Opinion, 9/5/14, at 1-5 (internal citations omitted and some internal capitalization omitted).

On November 12, 2013, the trial court denied Appellant's timely post-sentence motion. Appellant filed a timely notice of appeal and Appellant now raises one claim on appeal:

> Whether the evidence was insufficient to support the verdict of guilty on the charge of possession of an instrument of crime (gun)?

Appellant's Brief at 4.

Appellant claims that the evidence was insufficient to support his PIC conviction. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

According to Appellant, the evidence was insufficient to support his PIC conviction because there was no evidence that he possessed the firearm. Specifically, Appellant claims that the Commonwealth failed to demonstrate "that [Appellant] **knew** that the gun was atop the china cabinet in [Darnell Cooper's] residence[, at 5542 Crowson Street]."  Appellant's Brief at 14 (emphasis in original).  This claim fails.[2]

"In [] possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband."  *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa.

---

[2] As we have summarized:

> To prove PIC, the Commonwealth must demonstrate that the defendant "possesses any instrument of crime with intent to employ it criminally."  18 Pa.C.S.A. § 907.  An instrument of crime is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."  18 Pa.C.S.A. § 907(d).  It is undisputed that a gun can be an instrument of crime.

*Commonwealth v. Stokes*, 38 A.3d 846, 854 (Pa. Super. 2011).  On appeal, Appellant claims only that the Commonwealth failed to prove "that [Appellant] **knew** that the gun was atop the china cabinet in [Darnell Cooper's] residence[, at 5542 Crowson Street]."  Appellant's Brief at 14 (emphasis in original).  Our review is thus limited to the specific claim Appellant raises on appeal.

Super. 1981). Actual possession is proven "by showing . . . [that the contraband was] found on the [defendant's] person." ***Commonwealth v. Macolino***, 469 A.2d 132, 134 (Pa. 1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the contraband. ***Id.*** "Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal [contraband]: the power to control the contraband and the intent to exercise that control." ***Id.***

With respect to the element of "knowledge" in a possessory offense, this Court held:

> an awareness of the presence of the items which [the defendant] was accused of having [is] an essential element of his supposed intent to control. But this knowledge need not be proven by his admission of such knowledge, or by testimony of his associates that he saw these articles. **The defendant's knowledge of the presence of these articles may be inferred from all the surrounding circumstances**.

***Commonwealth v. Gladden***, 311 A.2d 711, 712 (Pa. Super. 1973) (*en banc*) (emphasis added) (internal quotations and citations omitted) (some internal capitalization omitted).

On appeal, Appellant claims that the Commonwealth failed to prove "that [Appellant] knew that the gun was atop the china cabinet in [Darnell Cooper's] residence[, at 5542 Crowson Street]." Appellant's Brief at 14 (emphasis omitted). However, viewing the evidence in the light most

favorable to the Commonwealth, we conclude that the evidence was sufficient to prove that Appellant knew that the gun was on top of the china cabinet.

At trial, the Commonwealth proved that Appellant and Darnell Cooper were involved in a conspiracy to sell crack cocaine and that they jointly possessed the crack cocaine, the drug paraphernalia, and the firearm that was found in or on the china cabinet inside of 5542 Crowson Street. To summarize, viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth proved that: Appellant and Darnell Cooper stationed themselves on the front porch of 5542 Crowson Street to meet cocaine purchasers; 5542 Crowson Street was a furnished and occupied house that the Commonwealth identified as belonging to "Darnell Cooper;" the prospective cocaine purchasers would walk up to 5542 Crowson Street and, from the sidewalk, would speak to Appellant and Mr. Cooper; while Appellant and Mr. Cooper stood on the front porch of 5542 Crowson Street, Appellant and Mr. Cooper would culminate their agreement with the buyers to sell crack cocaine; after arriving at their agreement, either Appellant or Mr. Cooper would enter the (otherwise empty and unfurnished) house at 5534 Crowson Street and retrieve a specific amount of crack cocaine; after retrieving the crack cocaine, Appellant or Mr. Cooper would walk back to the sidewalk in front of 5542 Crowson Street and exchange the crack cocaine with the purchaser for money; and, at the conclusion of the sale, Appellant or Mr. Cooper would walk back up to the front porch of 5542

Crowson Street and stand ready to make another sale. Further, at trial, the Commonwealth proved that Appellant was permitted entry into 5542 Crowson Street, as Officer Francis testified that Appellant and Mr. Cooper retreated into 5542 Crowson Street on May 31, 2011, after being questioned by the police. Finally, the Commonwealth proved at trial that, at the time of the search: there was no crack cocaine inside of the empty house at 5534 Crowson Street; there was a substantial amount of crack cocaine inside of the occupied house at 5542 Crowson Street; all of the cocaine found in 5542 Crowson Street was inside of a china cabinet and was individually packaged in "purple packets;" also inside of the china cabinet were empty "purple packets" and a scale that was used to weigh narcotics; and, on top of the same china cabinet that contained all of the crack cocaine and drug-dealing paraphernalia was a .38 caliber revolver.

We conclude that, viewing this evidence in the light most favorable to the Commonwealth – and giving the Commonwealth every reasonable inference from these facts – the evidence is clearly sufficient to prove that Appellant "knew that the gun was atop the china cabinet." Appellant's Brief at 14 (emphasis omitted). Certainly, the evidence demonstrates that Appellant and Mr. Cooper used the otherwise empty and unfurnished house at 5534 Crowson Street as their daily "stash house," but used the occupied and furnished home at 5542 Crowson Street as the **base** of their joint, illicit, drug-dealing operation. Further, the evidence demonstrates that Appellant and Mr. Cooper used the china cabinet inside of 5542 Crowson Street to

store all of their crack cocaine and related, drug-dealing paraphernalia and instruments – including the firearm. Thus, a reasonable juror could conclude that the firearm was jointly possessed by Appellant and Mr. Cooper to protect their joint, illegal operation. The evidence was thus sufficient to prove that Appellant knew the firearm was on top of the china cabinet. **See**

**Gladden**, 311 A.2d at 712-713 (holding that "[t]he defendant's knowledge of the presence of [the] articles may be inferred from all the surrounding circumstances"); **see also Stokes**, 38 A.3d at 854 (holding that the totality of the circumstances proved the defendant was aware of, and constructively possessed, the firearm that was discovered in the home).

Appellant's sufficiency of the evidence claim fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/2015