J-S54026-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PHILLIP MICHAEL WOLFE | |
| Appellant | No. 211 WDA 2017 |

Appeal from the Judgment of Sentence November 22, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001546-2015

BEFORE: OTT, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.: FILED NOVEMBER 17, 2017

Phillip Michael Wolfe appeals from the November 22, 2016 judgment of sentence entered in the Westmoreland County Court of Common Pleas following his conviction for theft of leased property, 18 Pa.C.S. § 3932(a). We affirm.

The opinion of the Honorable Rita Donovan Hathaway set forth the factual history of this case, which we adopt and incorporate herein. See Stmt. of the Court Issued Pursuant to Pa.R.A.P. Rule 1925, 3/27/17, at 1-7 ("1925(a) Op."). On August 24, 2016, after a bench trial, Wolfe was convicted of the aforementioned offense. On November 22, 2016, the trial court sentenced Wolfe to 16 months to 7 years' incarceration and ordered Wolfe to

_____

[*] Former Justice specially assigned to the Superior Court.

pay $37,705.27 in restitution to PennWest Industrial Trucks ("PennWest"). On December 1, 2016, Wolfe filed a post-sentence motion. On January 5, 2017, after a hearing, the trial court denied the motion. On January 26, 2017, Wolfe timely filed a notice of appeal.

Wolfe raises two issues on appeal:

 I. Whether the verdict was against the weight of the evidence as no direct or circumstantial evidence was presented that would indicate that [Wolfe] intentionally dealt with the leased property as his own?

 II. Whether the verdict was against the sufficiency of the evidence to allow the fact finder to find every element of the crime charged was proven beyond a reasonable doubt.

Wolfe's Br. at 6 (full capitalization omitted).

We address Wolfe's second issue first. Our standard of review for a sufficiency of the evidence claim is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless

the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Rodriguez, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting Commonwealth v. Tarrach, 42 A.3d 342, 345 (Pa.Super. 2012)).

Section 3932 of the Crimes Code defines theft of leased property as follows:

> (a) Offense defined.--A person who obtains personal property under an agreement for the lease or rental of the property is guilty of theft if he intentionally deals with the property as his own.
>
> (b) Definition.--As used in this section:
>
> > (1) A person "deals with the property as his own" if he sells, secretes, destroys, converts to his own use or otherwise disposes of the property.
> >
> > (2) A "written demand to return the property is delivered" when it is sent simultaneously by first class mail, evidenced by a certificate of mailing, and by registered or certified mail to the address provided by the lessee.
>
> (c) Presumption.--A person shall be prima facie presumed to have intent if he:
>
> > (1) signs the lease or rental agreement with a name other than his own and fails to return the property within the time specified in the agreement; or
> >
> > (2) fails to return the property to its owner within seven days after a written demand to return the property is delivered.
>
> (d) Exception.--This section shall not apply to secured transactions as defined in Title 13 (relating to commercial code).

18 Pa.C.S. § 3932.

Wolfe argues that the evidence was insufficient to convict him because the Commonwealth did not present evidence that Wolfe sold, secreted, destroyed, converted to his own use, or otherwise disposed of the property. According to Wolfe, the Commonwealth presented no documentary evidence that PennWest attempted to contact him regarding the delinquent account, which is required "to prove both elements of the crime." Wolfe's Br. at 11. Wolfe also asserts that "the mere fact that [he] continued to utilize the forklift after his account became delinquent in a location other than where the forklift was origin[]ally delivered does not does not equate to proof that [Wolfe] intentionally dealt with the property as his own." Id. Additionally, Wolfe asserts that witnesses from PennWest testified "that they lacked any firsthand knowledge that [Wolfe] tried to sell the forklift, represent it as his own[,] destroy[] the equipment, or secrete[] it." Id.

The trial court concluded that the evidence was sufficient to support Wolfe's conviction:

> [T]he testimony presented at trial established that [Wolfe] stopped making payments after August 2012 until the forklift was recovered in March 2014. [March] did not dispute this contention at trial. The Commonwealth's witnesses testified that they each tried to contact [Wolfe] in a variety of different ways after his account became delinquent. While [Wolfe] contended that he did not receive a majority of these contacts, he testified that he used the forklift for work jobs between August 2012 and March 2014, approximately 19 months. Moreover, he transported the forklift out of state to Maine, and to eastern Pennsylvania during that period. [Wolfe] did not return the forklift of his own volition, and it was only recovered after it was labeled as stolen and identified when a call for its repair was placed.

- 4 -

> When the forklift was taken in for repairs after it was recovered, it was revealed that it had been used for a total of 957 hours by [Wolfe] (the equivalent of 120 days of work at 8 hours per day).
>
> . . .
>
> Although [Wolfe] asserts that his relocation of the forklift to various locations does not represent a criminal charge, [Wolfe] was not convicted based on this fact. Rather, [Wolfe]'s evasion of all contact with PennWest after October 2012 and continued use [of] the forklift as his own supported the [conviction for] Theft of Leased Property.

1925(a) Op. at 9-10.

We agree with the trial court that there was ample evidence that Wolfe converted the forklift to his own use and, as a result, the evidence was sufficient to convict Wolfe of theft of leased property.[1]

We disagree with Wolfe's contention that the Commonwealth had to show written notice from PennWest. While the statute discusses written notice, it does so only in the context of creating a rebuttable presumption of intent. See 18 Pa.C.S. § 3932(c). A plain reading of the statute shows that written notice is not an element of the offense, and that the Commonwealth remains free to prove intent in other ways. Further, the trial court did not convict Wolfe based on any presumption of intent.

_____

[1] As the trial court noted, there is a dearth of case law interpreting section 3932 of the Crimes Code. The only reported case is Commonwealth v. Lebron, 765 A.2d 293 (Pa.Super. 2000), where we affirmed the trial court's quashal of the criminal information because the Commonwealth failed to present evidence that Lebron intended to secrete a rented vehicle or that Lebron received notice supporting a presumption that Lebron intended to deprive the rental company of the vehicle. 765 A.2d at 295-96.

Next, Wolfe argues that his convictions were against the weight of the evidence. Our standard of review for a weight of the evidence claim is as follows:

> [A challenge to the weight of the evidence] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or give the equal weight with all the facts is to deny justice.

Commonwealth v. Fisher, 47 A.3d 155, 158 (Pa.Super. 2012) (quoting Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000)).

Wolfe argues that "a guilty verdict was . . . not warranted as this case is a matter to be decided in civil court, rather than criminal." Wolfe's Br. at 12. Further, Wolfe asserts that the trial court incorrectly concluded that he did not "relinquish the forklift even after being on notice that he was delinquent in payment." Wolfe asserts that testimony that he directed a foreman to call PennWest for service shows that the verdict was against the weight of the evidence because "[a] man who is secreting a forklift or dealing

with it as his own would not direct his foreman to call the very company the forklift was leased from." Id. at 13.

Wolfe's arguments are unavailing. Wolfe's assertion that this matter should have been litigated civilly is irrelevant to the weight of the evidence presented. Further, while Wolfe testified that he instructed his foreman "to call PennWest or a Toyota dealer," N.T., 8/24/16, at 85, the trial court discredited Wolfe's testimony. The court, as trier of fact, further found that Wolfe "did not voluntarily relinquish possession of the forklift," which was "recovered only after [Wolfe]'s co-worker attempted to procure repairs for the equipment." 1925(a) Op. at 12. Because Wolfe continued to use the forklift after PennWest notified him that his account was delinquent and ceased communications with PennWest after stating that he would make arrangements to pay PennWest, we conclude that the trial court did not abuse its discretion in finding that Wolfe's "conviction certainly does not shock the conscious, nor is it against the weight of the evidence." Id.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/17/2017

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                                           )
    VS.                                )
                                           )    No. 1546 C 2015
PHILLIP MICHAEL WOLFE,       )
                  Defendant.    )

## STATEMENT OF THE COURT
## ISSUED PURSUANT TO PA.R.A.P. RULE 1925

AND NOW, this ⟨27⟩ day of March, 2017, it appearing to the Court that the

Defendant filed a Notice of Appeal from the Court's dismissal of his post-sentence

motions on January 5, 2017, and that Defendant filed a Concise Statement of the Errors

Complained of on Appeal as Ordered by this Court, pursuant to Rule 1925(a) of the Rules

of Appellate Procedure, the reasons for said decision are as follows:

## FACTUAL HISTORY:

The charges in this matter arise from a rental contract that was executed in 2012

by PennWest and Agtek Metal Works in Mount Pleasant, Westmoreland County. The

facts as set forth herein are derived from testimony presented at the non-jury trial of this

matter that occurred on August 24, 2016.

John Quail, rental manager at PennWest (a forklift dealership), located in Mount

Pleasant, Westmoreland County, testified that on or around August 22, 2011, he spoke

with Defendant by phone. Defendant stated that he wished to rent a forklift capable of

APPENDIX C

1

lifting 15,000 pounds. (TT 8).[1] On October 23, 2011, a rental agreement was executed for a Toyota forklift (serial number 70271) to be leased to Defendant. Defendant's company address was listed as 7325 Kelsay Road, Hartville, Missouri. The shipping address was listed as 373 South Pleasant Avenue, Somerset, Pennsylvania. A bill of lading was also prepared, wherein Agtek Metal Works was listed as the consigner, accompanied by Defendant's phone number. Quail testified that the machine was valued at $65,000. (TT 12). While the term of the rental on the rental agreement was to begin on October 25, 2011, the next line—the end date —remained empty. (TT 12). Quail noted that this was common, since many customers are unsure of the precise time period that they will require rental equipment. (TT 12).

The forklift was delivered to Defendant on October 25, 2011, and was listed as having 1,076 hours of activity. (TT 11, 27). Quail noted that as part of the contract, Defendant was "not to part with possession of the equipment, either voluntarily or involuntarily, or remove from ship to location . . . as stated on page 1 or assign any right hereunder without the prior consent of the owner." (TT 20). Quail stated that Defendant never asked for permission to remove the equipment from the delivery site. (TT 21).

James Richards, a truck driver for Black Mountain Enterprises, was contracted by PennWest to deliver the forklift to Defendant. (TT 33). Richards stated that upon delivery, he met with Defendant, who signed the rental agreement. He also received a check from Defendant in the amount of $650. (TT 35-36).

---

[1] The acronym "TT" refers to specific pages of the non-jury trial transcript, which was held on August 24, 2016, and made a part of the record herein.

Richards noted that at some point after he delivered the forklift, PennWest contracted him to travel back to the delivery location in Somerset County to try to recover the piece of machinery. (TT 38). He described that when he returned to the Somerset location:

> . . . I pulled up to the location because I had been there before and there wasn't any people around. Everything was locked up. I called our rental officer and he tried to get a hold of – I would imagine he tried to get a hold of Mr. Wolfe with no answer. I know usually if there's nobody at the facility I can make a phone call trying to get a hold of a customer. There wasn't anybody there and the facility was locked.
> (TT 38).

Richards testified that he returned to the location two or three more times, with the same result. (TT 38).

Joseph Bubas, controller for PennWest, testified that he first became aware of Defendant and his rental agreement in 2012, when he was informed that Defendant was several months behind in rental payments. (TT 41). At that point, Bubas attempted to contact Defendant by e-mail and by phone. (TT 41). When those attempts were unsuccessful, he attempted to recover the forklift by contracting with Black Mountain Enterprises and James Richards. That attempt, too, failed. (TT 41). Bubas also noted that after Defendant initially paid PennWest by check, all other payments were made by credit card. (TT 42). Bubas stated that there were no problems with payments until August 2012, when the transaction was declined. He noted that no payments on the forklift were received thereafter. (TT 43).

3

Mark Gaier, owner of PennWest, testified that he became aware of Defendant's delinquent account in 2013. (TT 53). Gaier stated he attempted to contact Defendant by phone on several occasions, but those attempts were unsuccessful. (TT 53). Specifically, Gaier "did a Google search to verify the accuracy of the address that was on the rental documents and the phone numbers and they matched to an Agtek phone number," at which point he "initiated several phone calls trying to contact [Defendant]." (TT 53). After these failed attempts, he contacted the Pennsylvania State Police ("PSP") and entered the forklift's serial number into Toyota's database and had it identified as stolen. (TT 54). In March 2014, he received notice from a Toyota parts department in Eastern Pennsylvania that a "hit" had occurred on the serial number. (TT 54, 56). Specifically:

> A service call was generated by an individual representing
> themselves as Agtek, equipment needing service at the
> location where the lift truck was operating. That is different
> from it being taken by [Defendant] to a servicing dealer. It's a
> field service repair. In other words, a mechanic is dispatched
> to their location to make a repair.
> (TT 60)

Gaier then contacted the PSP again to notify them of its location. (TT 54). The PSP took possession of the forklift until PennWest could arrange for pick-up. (TT 55). Gaier also testified that after the forklift was recovered, repair costs totaled $1,705. (TT 57). The repair order also noted that the forklift had been used for 2033 hours at the time of recovery (a difference of 957 hours). (TT 56, 103).

Trooper John Sherid of the PSP testified that Joe Bubas of PennWest contacted him on March 1, 2013 regarding Defendant and the rented forklift. (TT 70). Trooper Sherid met with Bubas on March 1, 2013, and Bubas informed Trooper Sherid that he

4

had not received payment for the rented forklift in six months, and that attempts to recover the forklift at the Somerset location had been fruitless. At that point, Trooper Sherid attempted to contact Defendant by telephone, but was unsuccessful. (TT 72). After speaking with Wright County, Missouri, Sheriff Adler on March 20, 2013, Trooper Sherid learned that there were several active warrants against Defendant. Sheriff Adler attempted to serve the warrants on that date, but was unable to locate Defendant. (TT 72). Those attempts were also unsuccessful. Trooper Sherid filed a criminal complaint on May 2, 2013, after several months of failed attempts to locate and recover the forklift. (TT 72). On May 13, 2014, Trooper Sherid learned that the forklift had been recovered. (TT 74).

Defendant testified that he initially rented the forklift for the purpose of moving factory machinery as part of Agtek business operations. (TT 83). He stated that he had been engaged in business for Agtek for nine years. (TT 84). He also indicated that his jobs requiring a forklift lasted for approximately six months. (TT 84).

Defendant related that at some point during his rental of the forklift, he transported the equipment to Scranton, Pennsylvania for a job. (TT 84). He also stated that at some point, he discontinued payments. He elaborated that he "had a problem with payables coming in. . . and was fighting some of those payables trying to get money received." (TT 85). He stated that he did not receive any letters or correspondence from PennWest during that time. He testified that the forklift eventually required service while in the Scranton area, although he stated that he was at a California Campbell's Soup plant at the time. (TT 85, 92). He testified that his foreman contacted him about the required service,

5

and Defendant informed him that he should call PennWest or a Toyota dealer to handle the repairs. (TT 85). His foreman then reported to him that "somebody was picking up the forklift." (TT 85). Defendant stated that was the last contact he had with PennWest or the forklift. (TT 86).

Defendant also related that he believed he was permitted to move the forklift, and that "as long as I was paying for it we could move it. I didn't actually read all the fine print on the sheet. It's too fine." (TT 86). He testified that he was never directly contacted by PennWest, but stated that in September 2012, PennWest did send him an invoice. (TT 89). He stated, "I had an invoice that was mailed to me, but when I'm out in the field I usually didn't get anything but e-mails or phone calls and I didn't get any from [PennWest]." (TT 89). When asked whether he contacted PennWest by phone in September 2012, he stated that it was possible. (TT 89). The Assistant District Attorney then inquired about a note in PennWest's file that indicated that as part of the September phone call, Defendant apologized for being behind on payments, that he and his wife had been in the hospital, and that he was waiting to receive payment from customers so that he could pay PennWest. (TT 89-90). Defendant related that although he did not recall the particular phone call, he remembered that PennWest had called because "I was just getting out of the hospital." (TT 90).

The Assistant District Attorney then inquired about several other contacts with PennWest, which were contained in PennWest's files:

> **A.D.A.:** Now, they have a note here on October the 1st of
> 2012 that you called again stating that you would make

payment by the end of the week October 5, 2012, do you recall that?

**Defendant**: Yes, I believe we made a payment.

**A.D.A.**: Well, at the end of October you indicated you called PennWest again saying you would make a $2,000 wire payment, that you were waiting for a check to clear the bank and this would happen on November the 7th, isn't that true?

**Defendant**: I verbally did do that.

**A.D.A.**: But, in fact, there was some problem and you never paid PennWest?

**Defendant**: I don't recall that, but . . .

**A.D.A.**: There's another entry in November of 2012 that Mr. Quail sent you a text message but he didn't receive any response?

**Defendant**: I don't remember getting a text message.

**A.D.A.**: All right. And Mr. Bubas testified that you hadn't made a payment to PennWest since August of 2012. Do you have any documents to dispute that?

**Defendant**: No, I don't.

(TT 90-91).

Upon cross-examination, Defendant also stated that the forklift had been transported to Maine at some point before it was recovered in Scranton, Pennsylvania. (TT 93). He also testified that he had been utilizing the forklift for work jobs between August 2012 and March 2014. (TT 93).

The Court found Defendant guilty of Theft of Leased Property. On November 22, 2016, Defendant was sentenced to 16 months to 7 years incarceration (RRRI eligible at 12 months). He was also ordered to pay $37,705.27 in restitution to PennWest Industrial Trucks.

Defendant asserts that the Court erred by denying Defendant's motion for Judgment of Acquittal, "as no evidence was presented to prove that the Defendant intentionally dealt with the property at issue as his own." *See Supplement to Defendant's*

7

*Statement of Matters Complained of on Appeal.* Defendant also asserts that there was not sufficient evidence to convict him of Theft of Leased Property. Last, Defendant avers that the guilty verdict was against the weight of the evidence, as "even though removing the leased property from the location from which i[t] was delivered was prohibited by a provision of the leasing contract, it does not equate to a criminal offense . . ." *Id.*

## ANALYSIS:

### I. WHETHER THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL; OR WHETHER SUFFICIENT EVIDENCE EXISTED TO CONVICT DEFENDANT?

Defendant challenges both the sufficiency of the evidence and the Court's denial of his motion for Judgment of Acquittal; both of these challenges are essentially a question of whether sufficient evidence existed to convict Defendant. A motion for Judgment of Acquittal "challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Comm. v. Hutchinson*, 947 A.2d 800, 805 (Pa.Super. 2008).

In reviewing a sufficiency of the evidence claim, a court must:

> [D]etermine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

8

*Comm. v. Feliciano,* 67 A.3d 19, 23-24 (Pa.Super.2013), *citing Comm. v. Stokes,* 38 A.3d 846, 853–54 (Pa.Super.2011) (internal citations and quotations omitted).

Defendant was only charged with one count, Theft of Leased Property. Under that statute, the Commonwealth has the burden of proving the following elements:

> **Theft of leased property**
> (a)　Offense defined.- A person who obtains personal property under an agreement for the lease or rental of the property is guilty of theft if he intentionally deals with the property as his own.
> (b) Definition.—As used in this section, a person "deals with the property as his own" if he sells, secretes, destroys, converts to his own use or otherwise disposes of the property.
> *18 Pa.C.S.A. §3932*

Thus, the Commonwealth must prove that Defendant acquired the property by agreement, and that intentionally dealt with the property as his own. It is uncontested that a rental agreement between Defendant and PennWest existed; thus, the only issue is whether Defendant dealt with the property as his own.

There is a dearth of case law regarding this specific statute. However, the testimony presented at trial established that Defendant stopped making payments after August 2012 until the forklift was recovered in March 2014.[2] Defendant did not dispute this contention at trial. (TT 90-91). The Commonwealth's witnesses testified that they each tried to contact Defendant in a variety of different ways after his account became delinquent. While Defendant contended that he did not receive a majority of these

---

[2] **A.D.A.:** Were specific invoices sent to the defendant regarding the payment?
**Bubas:** Yes.
**A.D.A.:** And did you receive payment?
**Bubas:** Not after the payment we received in August of 2012.
(TT 43).

9

contacts, he testified that he used the forklift for work jobs between August 2012 and March 2014, approximately 19 months. Moreover, he transported the forklift out of state to Maine, and to eastern Pennsylvania during that period. Defendant did not return the forklift on his own volition, and it was only recovered after it was labeled as stolen and identified when a call for its repair was placed. When the forklift was taken in for repairs after it was recovered, it was revealed that it had been used for a total of 957 hours by Defendant (the equivalent of 120 days of work at 8 hours per day).

The Court also did not find Defendant's testimony to be credible. Specifically, the Court stated:

> I agree with the Commonwealth if it had been a month or two and the defendant couldn't pay and he did make some phone calls or called PennWest that he was having some difficulties we wouldn't be here today, but then all contact stopped. He knew that this did not belong to him. He knew this was a $65,000 piece of equipment. It clearly states so on the rental agreement. He did deal with it as his own, and if he couldn't make the payments he should have called and said I'm sorry, I cannot make the payments.
> (TT 104).

Conversely, the Court found the Commonwealth's witnesses to be credible. Each of them detailed their role at PennWest and their unsuccessful efforts to contact Defendant. (TT 38, 41, 53, 72).

Although Defendant asserts that his relocation of the forklift to various locations does not represent a criminal charge, Defendant was not convicted based on this fact. Rather, Defendant's evasion of all contact with PennWest after October 2012 and continued use the forklift as his own supported the charge of Theft of Leased Property.

10

For these reasons, there was sufficient evidence to convict Defendant, and the Court did not err by denying Defendant's motion for Judgment of Acquittal.

## II. WHETHER DEFENDANT'S CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE?

In the alternative, Defendant avers that his conviction was against the weight of the evidence. In order to support a claim that a jury verdict was against the weight of the evidence and for a trial court to grant a new trial, the verdict must be "so contrary to the evidence as to shock one's sense of justice and [make] the award of a new trial [ ] imperative so that right may be given another opportunity to prevail." ***Comm. v. Whitney***, 512 A.2d 1152, 1155-56 (Pa. 1986). Moreover:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. ***Commonwealth v. Brown***, 538 Pa. 410, 648 A.2d 1177, 1189 (1994). Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farguharson***, 467 Pa. 50, 354 A.2d 545 (Pa.1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. ***Comm. v. Widmer***, 744 A.2d 745, 753 (Pa.2000).

As the finder of fact, the Court determined that Defendant's testimony was not credible, and that the Commonwealth's witnesses were credible, as discussed, *supra*. Although Defendant contends in his Concise Statement that "no direct nor circumstantial evidence was presented that would indicate that the Defendant intentionally dealt with the

11

leased property as his own," this is inaccurate. Defendant testified that he used the property as part of his work after he stopped paying PennWest, and ceased communications in October 2012. He also testified that he was on notice that his credit card payments were not processing, and that he contacted PennWest by phone and apologized for being behind on payments. (TT 90-91). Thus, Defendant was on notice that he was not paying for the equipment that he was using, whether he was in California or Pennsylvania. Defendant did not voluntary relinquish possession of the forklift, and it was recovered only after Defendant's co-worker attempted to procure repairs for the equipment. Thus, Defendant's conviction certainly does not shock the conscious, nor is it against the weight of the evidence.

## CONCLUSION:

For the foregoing reasons of fact and of law, the Court has determined that the issues raised on appeal lack merit, this Court did not err and the verdict was supported by the evidence presented.

BY THE COURT,

Rita Donovan Hathaway, Judge

ATTEST:

_____   _____

Clerk of Courts

12

c.c.    File
        Allen Powanda, Esq., Assistant District Attorney
        Patrice DiPietro, Esq., Counsel for Defendant
        Pamela Niederhiser, Esq., Court Administrator's Office