J-S73024-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AMOS JARARD TAYLOR, | |
| Appellant | No. 617 WDA 2018 |

Appeal from the Judgment of Sentence Entered January 2, 2018
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001489-2017

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:         FILED JANUARY 23, 2019

Appellant, Amos Jarard Taylor, appeals from the judgment of sentence of an aggregate term of four to ten years' incarceration, imposed after a jury convicted him of sexual assault, 18 Pa.C.S. § 3124.1, indecent assault without consent, 18 Pa.C.S. § 3126(a)(1), and corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii). We affirm.

We need not reiterate the procedural history and factual background of this case, as the trial court set forth a comprehensive summary of both in its April 16, 2018 opinion and order, which it subsequently relied on as its Pa.R.A.P. 1925(a) opinion. See Trial Court Opinion and Order, 4/16/2018, at 1-6 ("TCO"); Rule 1925(a) Opinion, 5/10/2018, at 1 (unnumbered, single page). Appellant presently raises the following issues for our review:

1. Whether the Court of Common Pleas erred in determining the jury's verdicts were based on sufficient evidence?

2. Whether the Court of Common Pleas erred [in concluding] the jury's verdicts were [not] against the weight of the evidence?

Appellant's Brief at 2.

We have reviewed the thorough and well-crafted opinion drafted by the Honorable Rita Donovan Hathaway of the Court of Common Pleas of Westmoreland County. We conclude that Judge Hathaway's opinion accurately and thoroughly disposes of Appellant's first issue, in which he challenges the sufficiency of the evidence underlying his convictions. See TCO at 6-9.[1] Accordingly, we adopt Judge Hathaway's opinion as our own on this issue.

In Appellant's second issue, he contests the weight of the evidence to sustain his convictions. Appellant argues that "[t]he alleged victim presented multiple accounts of the alleged sexual contact with differing detail and chronology." Appellant's Brief at 13-14. Specifically, he says that "[d]uring each of the alleged events, [the victim] recounted either being in the presence of a sleeping relative, being unable to awake nearby sleeping relatives, or choosing not to wake them in order not to inconvenience them." Id. at 14. He claims that "[n]one of the other eight ... occupants of the home at the time

_____

[1] On appeal, Appellant argues that "[t]he Commonwealth failed to produce sufficient evidence to convict ... Appellant given the alleged victim['s] perceived lack of credibility and the dearth of physical evidence." Appellant's Brief at 9. We observe that this argument challenges the weight of the evidence, not the sufficiency of it. See Commonwealth v. Gaskins, 692 A.2d 224, 227 (Pa. Super. 1997) ("[C]redibility determinations are made by the fact finder and ... challenges thereto go to the weight, and not the sufficiency, of the evidence.").

of the alleged events produced any evidence of any inappropriate contact between … Appellant and [the victim]." Id. Further, he claims that "the Commonwealth failed to produce any physical evidence of any of the crimes, including corroborating text messages, recordings, or audiotapes of … Appellant's alleged confession." Id. (citation omitted).

> We apply the following standard of review:
>
> As a general rule, the weight of the evidence is exclusively for the fact finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

Commonwealth v. Castlehun, 889 A.2d 1228, 1234 (Pa. Super. 2005) (internal citations and quotation marks omitted).

Here, the trial court rejected Appellant's weight claim. It explained that "the jury determined that [the victim's] testimony was credible in that it established [Appellant's] guilt beyond a reasonable doubt at several counts. It is not the [c]ourt's role to disturb the jury's credibility determinations." TCO at 11. Further, it opined that, "[b]ased on the [c]ourt's own independent review of the record, the guilty verdict did not shock the [c]ourt's sense of justice, nor was it the result of pure conjecture." Id.

Although there were inconsistencies in the victim's testimony, no physical evidence of any of the offenses, and a lack of testimony by other

occupants in the home pertaining to inappropriate contact between the victim and Appellant, we cannot conclude that the trial court abused its discretion when it concluded that the jury's verdict did not shock its sense of justice. Accordingly, no relief is due.

First, regarding any inconsistencies in the victim's testimony, the trial court correctly discerned that the jury determines the credibility of witnesses. In this case, the jury found the victim to be credible despite conflicts and peculiarities in her testimony. See Castlehun, 889 A.2d at 1234 ("[T]he fact finder … is free to believe all, part or none of the evidence and to determine the credibility of the witnesses.") (citation omitted). Second, concerning physical evidence, this Court has previously rejected similar weight arguments based on a purported lack of it. See Commonwealth v. Diaz, 152 A.3d 1040, 1047 (Pa. Super. 2016) (determining that the trial court did not abuse its discretion in denying the appellant's weight claim as "the lack of corroborating physical evidence does not undermine the victim's testimony, found to be credible by the jury"). Finally, with respect to Appellant's argument that the victim did not alert sleeping relatives about any of the incidents involving Appellant, the victim explained that she did not tell anybody about the incidents because she "didn't want anybody to know" and to "look at [her] differently." N.T. Trial, 10/4/2017-10/6/2017, at 53. The trial court also acknowledged that the jury was aware that the victim did not make prompt complaints following the encounters with Appellant and could weigh that evidence accordingly. See TCO at 10; see also N.T. at 139-44

- 4 -

(discussing the victim's failure to notify anyone of the incidents as well as arguing that there were numerous occupants living in the residence at the time of the incidents). Additionally, while Appellant contends that none of the home's occupants testified to any inappropriate contact between Appellant and the victim, the victim's mother and her two stepsisters gave testimony that Appellant — who was approximately 34 years old at the time — indicated to them that he liked the sixteen-year-old victim, thought she was attractive, and wanted to date her. N.T. at 80-81, 89, 96, 98. Further, a detective investigating the case testified that Appellant stated during an interview that the victim "had a crush on him and he had a crush on her. They would sit on the couch and cuddle and kiss and watch movies, but he denied any other sexual activity. [Appellant] also told [the detective] that he did go to [the victim's] parents and ask[ed for their] permission to date her." Id. at 101. Thus, looking at the evidence adduced at trial, we see no abuse of discretion by the trial court in determining that the jury's verdict did not shock its sense of justice. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2019

## IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
 )
 )
vs. ) No. 1489 C 2017
 )
AMOS JARARD TAYLOR, )
   Defendant. )
 )

### OPINION AND ORDER OF COURT

This matter comes before the Court for consideration of Defendant's post-sentence motions that have been filed in the above-captioned case.

## FACTUAL AND PROCEDURAL HISTORY:

The charges in this matter arise from Defendant's sexual contact with a minor, that occurred in the fall of 2016 in the City of Arnold, Westmoreland County.

Defendant was charged by criminal information with one count of rape by forcible compulsion, 18 Pa.C.S.A. §3121(a)(1), one count of involuntary deviate sexual intercourse by forcible compulsion, 18 Pa.C.S.A. §3123(a)(1), one count of sexual assault, 18 Pa.C.S.A. §3124.1, one count of indecent assault by forcible compulsion, 18 Pa.C.S.A. §3126(a)(2), one count of indecent assault without consent, 18 Pa.C.S.A. §3126(a)(1), and one count of corruption of minors, 18 Pa.C.S.A. §6301(a)(1)(ii). Defendant proceeded to a jury trial on October 4, 2017, represented by Attorney John Sweeney. Defendant was found guilty of sexual assault, indecent assault without consent,

1

and corruption of minors. He was found not guilty of rape, involuntary deviate sexual intercourse, and indecent assault, forcible compulsion.

Defendant was sentenced on January 2, 2018 to an aggregate period of incarceration of 4-10 years. Attorney John Sweeney filed timely post-sentence motions. Shortly thereafter, Defendant filed a motion for new counsel, which the Court granted. The Court appointed Attorney Kenneth Noga to represent Defendant on March 2, 2018. Attorney Noga filed supplemental post-sentence motions on March 12, 2018. The following testimony was offered at trial:

Victim M.M. testified that at the time of the instant offenses, she resided with her mother, stepfather, two younger sisters, older brother, two stepsisters, and Defendant in a duplex at 1710 Riverside Drive. (TT 41). She was approximately 16 years old. (TT 41). She stated that late one evening, she, Defendant, and her stepsister Cassie were watching a movie in the living room. (TT 46).[1] Cassie was sitting on a couch between M.M. and Defendant, but eventually moved to another couch in the same room to tend to her baby. ft(TT 46). At some point during the movie, Cassie "dozed off," and M.M. stated that she "felt someone on top of" her, whom she identified as Defendant. (TT 47). Defendant told M.M. that he wanted her, while M.M. replied, "I don't want you." (TT 47). M.M. then left the room to drink a glass of water, and when she returned, Defendant "tried to do oral" on her. (TT 48). M.M. was able to extricate herself from the situation by repeatedly kicking Defendant and then retreating her bedroom. (TT 48).

---

[1] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the testimony presented at trial, held October 4-6, 2017, and made a part of the record herein.

2

M.M. also testified that at some point, she moved into a new bedroom in the attic of the duplex. (TT 49). As she was getting ready for bed one evening, she "kept hearing noises... like the old wooden steps going up to [the] room." (TT 49). She also heard the door squeak open. (TT 49). She did not see anyone, but again heard the noises. (TT 49). She then saw "a shadow figure" that "tripped" and "landed on [her] bed." (TT 50). M.M. identified this individual as Defendant. As Defendant climbed on top of her, M.M. told him that she did not want him, and tried to call for her mother. (TT 50). M.M.'s mother did not hear her, however, and at that point, M.M. testified that Defendant "stuck his penis inside [her] vagina." (TT 50).

M.M. also testified about an incident in which Defendant attempted to assault her while she was showering. She stated that Defendant stepped into the shower naked, and pinned her against the wall. (TT 52). M.M. threw a soap bottle at Defendant, and was able to leave the room. (TT 52).

M.M. testified that she did not tell anyone about these incidents because she did not want anyone to look at her differently. (TT 53). She eventually told her stepsister, Danna, that she was "upset," and Danna began to "[put the] pieces together." (TT 53). Danna told a school guidance counselor about her suspicions, and after M.M. was called into to her guidance counselor's office, she eventually informed school officials that Defendant had sexually assaulted her. (TT 55). M.M. also testified that Defendant told her that her parents said it was "okay" for M.M. and Defendant to date, but that her mother denied making that statement. (TT 54).

3

Danna Kelly, M.M.'s stepsister, testified that while Defendant was living with them on Riverside Drive, he often commented on M.M. Specifically, he said that she was beautiful and that he "thought he loved her." (TT 80-81). Danna also testified that Defendant would often go into M.M.'s bedroom and "move her stuff around." (TT 81). At some point, M.M. told Danna that Defendant had touched her inappropriately, and "it went from just the touching to she said he had raped her." (TT 82). Danna immediately informed the principal at her school, who talked to M.M. about the information and contacted her parents. (TT 82).

Shelia Kelly, M.M.'s mother, testified that she knew Defendant because her husband had known him "since he was a baby." (TT 88). She stated that she agreed to let Defendant move in with her family in the fall of 2016. (TT 89). Approximately two weeks after Defendant arrived, he asked her whether he could date M.M. (TT 89). Shelia informed him that he could not date M.M., since she was a minor. (TT 89). Defendant responded that "age is just a number." (TT 89). Shelia reiterated that at no point did she say Defendant could date M.M. (TT 90). She also testified that when she received a phone call from M.M.'s school about Defendant's abuse, she told Defendant that he had to leave and that he was no longer permitted in the home. (TT 90).

Cassie Kelly, M.M.'s stepsister, testified that Defendant informed her that M.M. "was pretty," that "he liked her," and that he wanted to date her. (TT 96). She testified that Defendant would "sometimes bring up...flaws about" M.M.'s boyfriends, and sometimes mentioned that they should not be together. (TT 97).

4

Detective Robert Weaver testified that as part of his investigation, he met with M.M., her family members, and Defendant. (TT 100). Detective Weaver testified that Defendant informed him that he and M.M. would "cuddle and kiss," but denied "any other sexual activity." (TT 101). Detective Weaver also stated that Defendant told him that he did ask M.M.'s parents for "permission to date her" and that "they mutually decided that he shouldn't date her." (TT 101). Detective Weaver testified that Defendant told him he was aware of M.M.'s age. (TT 101).

Defendant testified that he resided with M.M. and her family in 2016, when he was approximately 34 years old. He stated that he moved in with the family because he was experiencing a difficult time in his life after the death of his mother, and that along with being friends with M.M.'s stepfather, he also had a working relationship with him in the construction field. (TT 119-20). He stated that while he resided at the home, he slept on the living room couch. (TT 122).

He stated that he never asked M.M.'s parents for permission to date their daughter, and that he had had informed Detective Weaver that "everybody in the house hugged one another." (TT 122-23). He averred, however, that they only hugged each other "like family." (TT 123). He testified that he never attempted to initiate any sexual encounter with M.M. (TT 124). He also denied attempting to assault her in the shower or having intercourse with her in her bedroom. (TT 124). He also stated that he knew M.M. was 16 when they lived together. (TT 127).

In his post-sentence motions, Defendant avers that there was not sufficient evidence to convict him of the aforementioned offenses. In the alternative, he believes that his conviction was against the weight of the evidence because M.M.'s testimony contained "clear inconsistencies" and should not have been found to be credible. Moreover, he states that M.M. "had opportunity to report the allegations to family members" while away from the residence, and the fact that she did not do so "further undermin[es] the credibility of her testimony."

ANALYSIS:

I.    WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONVICT DEFENDANT OF THE OFFENSES CHARGED?

Defendant first avers that there was not sufficient evidence to convict him of any of the offenses for which he was convicted. In reviewing a sufficiency of the evidence claim, a court must:

> [D]etermine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
> *Comm. v. Feliciano,* 67 A.3d 19, 23-24 (Pa.Super.2013), *citing Comm. v. Stokes,* 38 A.3d 846, 853–54 (Pa.Super.2011) (internal citations and quotations omitted).

Further, the evidence presented at trial need not preclude every possibility of innocence. The Superior Court in *Feliciano* established that:

> [T]he fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the

6

evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.
*Id.* (emphasis added).

Defendant was convicted of one count of sexual assault. A person is guilty of sexual assault if the defendant had either vaginal or oral sex with the victim, that such intercourse occurred without the victim's consent, and the defendant acted knowingly or recklessly with regards to the victim's consent. 18 Pa.C.S.A. §3124.1.

M.M. testified that on one occasion, Defendant entered her bedroom at night, climbed on top of her, and "stuck his penis in my vagina." (TT 50). M.M. testified that she informed Defendant that she did not want him, and told him to leave her room. (TT 50). When Defendant would not leave, M.M. attempted in vain to call for her mother. (TT 50). Certainly, the Commonwealth's case relies on M.M.'s testimony; however, a victim's uncorroborated testimony can be sufficient to convict a defendant of sexual assault. *See, e.g., Comm. v. Castelhun,* 889 A.2 1228, 1232 (Pa.Super. 2005). For these reasons, there was sufficient evidence to convict Defendant of sexual assault.

Defendant was also convicted of one count of indecent assault without consent. A defendant is guilty of this offense if he or she has indecent contact with an individual or causes the individual to have indecent contact with the defendant without consent of the individual. 18 Pa.C.S.A. §3126(a)(1). Section 3101 defines indecent contact as "[a]ny

7

touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. §3101. The Superior Court has held that the language of the statute includes both "sexual" and "other intimate parts" as possible erogenous zones for purposes of prosecution. Therefore, the phrase "other intimate parts" cannot refer solely to genitalia, as such a construction ignores the distinction between "sexual" and "other intimate parts," making the latter term redundant. *Comm. v. Capo*, 727 A.2d 1126, 1127 (Pa.Super. 1999).

As discussed, *supra*, M.M. testified that Defendant climbed on top of her in her bed and engaged in vaginal intercourse without her consent. (TT 50). M.M. also testified that while she was showering, Defendant walked into the shower naked and pinned her against the wall. (TT 52). Moreover, Defendant also climbed on top of M.M. while they were watching a movie, and attempted to perform oral sex on her. (TT 47-48). These encounters constitute sufficient evidence to establish that Defendant had indecent contact with M.M. for his own sexual gratification for purposes of committing indecent assault.

Finally, Defendant avers that there was insufficient evidence to convict him of corruption of minors. A defendant is guilty of this offense if the defendant is 18 years or older, and, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31. 18 Pa.C.S.A. §6301(a)(1)(ii).

8

M.M. testified that she was 16 years old at the time the offenses were committed, while Defendant testified that he was approximately 34 years old. (TT 118). Defendant also conceded that he knew M.M.'s age. (TT 127). Certainly, attempting to perform oral intercourse and having vaginal intercourse with a minor would fall under the conduct prohibited by the above statute. For these reasons, there was sufficient evidence to convict Defendant of corruption of minors.

## II. WHETHER DEFENDANT'S CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE?

Defendant also avers that his conviction was against the weight of the evidence. Specifically, he argues that the victim's testimony should not have been found credible as he believed there existed clear inconsistencies between her testimony at the time of the trial and that which she offered at the preliminary hearing. He also avers that the alleged victim had opportunity to report the allegations to family members, as she was away from the residence for several weeks at her grandmother's residence.

When a defendant raises a weight of the evidence claim, it is a trial court's role to determine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014). A trial court should award a new trial if the verdict of the fact-finder "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* Moreover, "[a] weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the

9

evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Comm. v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013).

It is well-established that "the [trier] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Comm. v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011). Defense counsel certainly elicited during cross-examination discrepancies between M.M.'s testimony during the preliminary hearing and during trial. For instance, defense counsel asked the following at trial:

> **Defense counsel:** You had said your recollection was that the bedroom episode happened before or after you came back from Delaware, right?
> **M.M.:** Correct.
> **Defense counsel:** I'm going to show you this transcript again and I want you to read from line 22, page 8 through page 9.
> [Witness reviews transcript]
> **Defense counsel:** And does that refresh your recollection about when you went to Delaware?
> **M.M.:** That was, like, three days before Delaware.
> **Defense counsel:** And you told us at the magistrate's that bedroom incident happened three days before you went to Delaware?
> **M.M.:** Yes.
> **Defense counsel:** Does that refresh your recollection?
> **M.M.:** About that? Not really. My memory is really bad.
> (TT 70-71).

Moreover, the Court instructed the jury that the fact that M.M. did not make a prompt complaint did not necessarily make her testimony unreliable, but "may remove it from the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make." (TT 173). Thus, based on M.M.'s testimony, defense counsel's cross-examination, and the instructions

10

given by the Court, the jury determined that M.M.'s testimony was credible in that it established Defendant's guilt beyond a reasonable doubt at several counts. It is not the Court's role to disturb the jury's credibility determinations. Based on the Court's own independent review of the record, the guilty verdict did not shock the Court's sense of justice, nor was it the result of pure conjecture. As such, Defendant's weight of the evidence claim must fail.

COMMONWEALTH OF PENNSYLVANIA    )
    )
    )   No.   1489 C 2017
vs.    )
    )
AMOS JARARD TAYLOR,    )
    Defendant.    )
    )

## ORDER OF COURT

AND NOW, this _16_ day of April, 2018, for the reasons set forth in the preceding Opinion, the Defendant's post-sentence motions are hereby **DENIED**.

The Defendant is notified that any appeal to the Superior Court of Pennsylvania from this court's denial of his Post-Sentence Motions must be filed within thirty (30) days from the date of this Order of Court.

BY THE COURT:

_____
Rita Donovan Hathaway, President Judge

ATTEST:

_____
Clerk of Courts

c.c:    File
Rebecca Calisti, Esq., Assistant District Attorney
Kenneth F. Noga, Esq., Counsel for Defendant
Pam Neiderhiser, Esq., Court Administrator's Office